UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN – GREEN BAY DIVISION
_____

VERSATILE HOUSEWARES &
GARDENING SYSTEMS, INC.,

            Plaintiff,

v.                                                            Civil Action No. 1:09-cv-846-WCG

THILL LOGISTICS, INC.;
SAS GROUP, INC.;
NAT, LLC; and
JORDAN DREW CORPORATION,

            Defendants.

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**
_____

      A preliminary injunction is necessary here not only to protect Versatile from SAS's continuing trademark infringement, copyright infringement, and fraudulent representations in its advertising, but also to protect the consuming public from being ripped off.

      Unfortunately, this case resulted from a business deal gone wrong between Versatile Housewares & Gardening Systems, Inc. ("Versatile") and SAS Group, Inc. ("SAS"). In December 2006 Versatile licensed to SAS its technology relating to the gardening tool, its AWESOME AUGER trademark, and copyrighted instructions and photographs. In turn, SAS spearheaded the marketing, advertising and sales of the gardening tool, and SAS paid a royalty to Versatile in exchange for the use of Versatile's intellectual property.

      Versatile and SAS had an amicable relationship until the summer of 2008, when SAS abruptly stopped its royalty payments to Versatile yet continued to use Versatile's AWESOME AUGER mark and copyrighted instructions and photos, resulting in the termination of the

Versatile's license to SAS in January 2009. In addition to SAS's trademark and copyright infringement, SAS has engaged in a bait-and-switch campaign whereby SAS uses photos of Versatile's gardening tool, which is 40" long, to sell SAS's gardening tool, which is only 22" long.

Since SAS no longer has Versatile's permission to use its AWESOME AUGER mark and copyrighted instructions and photos, SAS immediately must be enjoined from further use. SAS must also be enjoined from the deceptive practice of using photos of Versatile's gardening tool to sell SAS's gardening tool. SAS uses Thill Logistics, Inc. ("Thill") and its parent company NAT, LLC ("NAT") to import, store and distribute to customers the gardening tool, so Thill and NAT also must be enjoined from importing, storing and/or distributing the infringing products.

**Background**

The facts here are straightforward. Thomas Motosko, Versatile's principal, coined the AWESOME AUGER mark in 2001[1]. Motosko Decl., ¶ 2. Since then, Versatile, in part by virtue of Thomas Motosko's use, has been consistently and continuously using the mark in commerce in connection with Versatile's gardening tool products, thus establishing trademark rights under Section 43 of the Lanham Act. Motosko Decl., ¶ 4. In addition, on August 6, 2003, Thomas Motosko obtained a Wisconsin trademark registration for the AWESOME AUGER mark. Griggs Decl., ¶ 2, Ex. A. The Wisconsin trademark registration has since been assigned to Versatile. Motosko Decl., ¶ 3.

Versatile, by virtue of assignment from Thomas Motosko, also owns U.S. copyright registration no. TX0006411738, which issued December 6, 2005, for instructions that are included with Versatile's gardening tool product. Griggs Decl., ¶ 3, Ex. B (copyright registration); Griggs Decl., ¶ 4, Ex. C. (instructions). In addition to this registration, Versatile

---
[1] Thomas Motosko has since assigned the AWESOME AUGER mark to Versatile. Motosko Decl., ¶ 3.

has filed copyright applications for a promotional video for Versatile's gardening tool product as well as photos created from the video. Griggs Decl., ¶ 5, Ex. D (video application); Griggs Decl., ¶ 6, Ex. E. (photo application).

Around December 2006, Versatile licensed to SAS use of the AWESOME AUGER mark, use of the copyrighted instructions, and use of photos taken from the promotional video. Motosko Decl., ¶ 5. For a while, SAS paid royalties to Versatile for use of Versatile's trademarks and copyrighted works. *Id*. Then, in June 2008, SAS stopped making payments to SAS, thus causing the licensing agreement to terminate. *Id*.

As there is no licensing agreement in place, SAS is continuing to use Versatile's AWESOME AUGER mark and copyrighted works but without Versatile's permission. Motosko Decl., Exhibit A, ¶ 6; *see also* Griggs Decl., ¶ 7, Ex. F (SAS's packaging) and Griggs Decl., ¶ 8, Ex. G (SAS's instructions). SAS and its importers/distributors Thill and NAT must be enjoined from any further impermissible use of Versatile's AWESOME AUGER mark and copyrighted works.

In addition to SAS's unauthorized use of Versatile's trademark and copyrights, SAS is also engaging in a bait-and-switch operation that is irreparably harming Versatile, and that is also creating confusion and ill-will amongst the consuming public. The advertisements and packaging used by SAS depict Billy Mays using Versatile's gardening tool, which has a 40" shaft, while standing up. *See* Griggs Decl., ¶ 7, Ex. F. (SAS's packaging). SAS's product packaging further touts: "Dig large holes for planting… in minutes and without bending!" *Id*. However, SAS's gardening tool, which only has a 22" shaft, is in the box. Most adults cannot use SAS's gardening tool while standing up. The Billy Mays image, wherein he is using Versatile's gardening tool, is shown below.




*SAS's Packaging*    *SAS' gardening tool (top) and Versatile's (bottom)*

In sum, SAS is using pictures of Versatile's longer gardening tool to sell SAS's much shorter gardening tool. Griggs Decl., ¶ 9, Ex. H. (photo of SAS's and Versatile's gardening tools), also shown above. SAS's bait-and-switch operation has resulted in numerous customer complaints directed to Versatile regarding SAS's short-shaft gardening tools, which is damaging to Versatile's reputation with the consuming public. SAS, Thill and NAT must be enjoined to prevent further confusion amongst the consuming public, and to prevent any further damage to Versatile.

**Argument**

"As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer "irreparable harm" if preliminary relief is denied." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11-12, (7th Cir. 1992) *citing Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir. 1986) and *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984). If the moving party clears both the first and second thresholds, "the court must then

consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id*.

"The court, sitting as would a chancellor in equity, then 'weighs' all four factors in deciding whether to grant the injunction, seeking at all times to 'minimize the costs of being mistaken.' *Abbott* at 12 (citations omitted). "We call this process the 'sliding scale' approach: the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Id*.

As discussed in detail below, consideration of the factors in the context of the facts of this case warrant issuance of a preliminary injunction that precludes SAS, Thill and NAT from importing, selling or distributing gardening tool products that infringe Versatile's rights in its AWESOME AUGER mark and copyrighted works and harm the public.

**I.  Versatile is likely to succeed on the merits**

Versatile has three separate bases for issuance of a preliminary injunction: (1) Versatile's trademark infringement claim; (2) Versatile's copyright infringement claim; and (3) Versatile's claim against SAS for fraudulent representations.[2] Versatile only needs to prove a likelihood of success on the merits for any one of these claims, though, as discussed below, Versatile is likely to succeed on all three.

---

[2] Versatile also has Wisconsin state law and common law claims for trademark infringement, as well as a Wisconsin state law claim for fraudulent representations. Due to the similarity of the state claims to Versatile's federal claims, which are detailed in this memorandum, Versatile will not separately address the state claims herein. In any event, Versatile's state law claims serve as further bases for awarding a preliminary injunction.

### A. Versatile is likely to succeed on its trademark infringement claim

In order to demonstrate a likelihood of success on the merits of its trademark infringement claim, Versatile must show "(1) that it has a protectible trademark, and (2) a likelihood of confusion as to the origin of the defendant's product." *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001). Versatile "need only demonstrate at the preliminary injunction stage that it has a 'better than negligible' chance of succeeding on the merits so that injunctive relief would be justified." *Id*.

#### 1. Versatile has a protectible mark, and SAS is estopped from attacking it

With respect to the first prong, SAS has admitted that the AWESOME AUGER mark is a "protectible mark" because SAS (by virtue of defendant Jordan Drew) secured a trademark registration, albeit fraudulently,[3] for the AWESOME AUGER mark. Griggs Decl., ¶ 10, Ex. I (Jordan Drew trademark application and registration). Thus, SAS is estopped from now attacking the protectability of the AWESOME AUGER mark.

In any event, Versatile first coined the AWESOME AUGER mark in 2001 and has been using it continuously and consistently in commerce across the country since 2001. Motosko Decl., ¶ 4. Versatile has also used the mark on its website for over five (5) years. Motosko Decl., ¶ 4, Ex. 1 (Versatile's website); *see also* Motosko Decl., ¶ 4, Ex. 2 (reorder form). Thus, Versatile has established nationwide trademark rights in the AWESOME AUGER mark. *See Jim Henson Prods. Inc. v. John T. Brady & Assocs. Inc.*, 867 F.Supp. 175, 182 (S.D.N.Y 1994) ("A fundamental principle of trademark law is that trademark rights arise solely from use of a

---

[3] In its complaint, Versatile has alleged that Jordan Drew fraudulently secured a U.S. registration for Versatile's AWESOME AUGER mark. However, while the invalidity of that registration is not at issue with respect to Versatile's motion for preliminary injunction, the fact that Jordan Drew (and SAS by association with Jordan Drew) filed an application for the AWESOME AUGER mark estops SAS from now contesting the protectibility of the AWESOME AUGER mark.

mark in commerce to represent the goodwill of an ongoing business.") (citations omitted). Moreover, Versatile obtained a Wisconsin state registration for the AWESOME AUGER mark on August 6, 2003, further confirming that Versatile's AWESOME AUGER mark is a protectable mark. Griggs Decl., ¶ 2, Ex. A.

    2.    **SAS's use of Versatile's AWESOME AUGER mark creates a likelihood of confusion**

As for the second prong, the following factors are used to evaluate whether a likelihood of confusion exists in a trademark case: "(1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiffs." *Ty* at 897. Even though no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the 'most important factors' in a likelihood of confusion case. *Ty* at 898, *citing G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

Considering the "most important factors" first, all are present here. With respect to the similarity of the marks, SAS's AWESOME AUGER "mark" is identical to Versatile's AWESOME AUGER mark. This is no surprise because SAS previously licensed the AWESOME AUGER mark from Versatile and then continued to use it, without Versatile's permission, in exactly the same manner despite the termination of the license. Thus, this factor weighs in favor of Versatile because the "marks," which are actually one and the same, are indeed identical.

As for intent to palm off SAS's goods as Versatile's, this is clearly what is happening. In its advertising and on its packaging, SAS is using Versatile's AWESOME AUGER mark in

connection with a picture of Versatile's gardening tool in order to sell SAS's product, which is in the box. Griggs Decl., ¶ 7, Ex. F (SAS's packaging). This factor also weighs in favor of Versatile.

Finally, there are numerous instances of actual confusion wherein customers have contacted Versatile to complain about the quality of SAS's gardening tool product and about SAS's misleading advertising. Motosko Decl., ¶ 7. Accordingly, this factor weighs in favor of Versatile.

Notwithstanding that the three "most important factors" all favor Versatile, the remaining factors should also be considered. As for the second *Ty* factor, Versatile and SAS both sell gardening tools that are attached to a power drill. Griggs Decl., ¶ 9, Ex. H. (photo of SAS's and Versatile's gardening tools). Though not identical (SAS's gardening tool has a much shorter shaft and is therefore inferior in quality), both products are similar in that they are gardening tools used to dig holes in soil. This favors Versatile.

With respect to the third *Ty* factor, Versatile and SAS directly compete for sales to the same users, i.e., home gardeners. Namely, both Versatile and SAS are involved in direct response sales, e.g., using television infomercials and websites to sell directly to customers. Additionally, Versatile and SAS sell their respective gardening tools at trade shows and fairs throughout the country.

With respect to the fourth *Ty* factor, consumers are not likely to differentiate SAS's gardening tool from Versatile's gardening tool because SAS uses pictures of Versatile's gardening tool in its advertising and on its box. In other words, SAS is using Versatile's AWESOME AUGER mark and pictures of Versatile's gardening tool to sell SAS's product.

Accordingly, consumers are likely to be fooled by SAS's bait-and switch operation. Again, this factor weighs in favor of Versatile.

As for the fifth *Ty* factor, SAS cannot contest the strength of Versatile's AWESOME AUGER mark because SAS (via Jordan Drew) secured a registration, albeit fraudulently, for Versatile's AWESOME AUGER mark. Griggs Decl., ¶ 10, Ex. I (Jordan Drew's application and registration, particularly Kevin Harrington's declaration). Registered marks are presumed valid and at least suggestive. Accordingly, this factor weighs in favor of Versatile.

In sum, the three "most important factors" all weigh in favor of Versatile, and the remaining factors also weigh in favor of Versatile. Versatile has proven that it has a "better than negligible" chance at succeeding on the merits with respect to its trademark infringement claim. *Ty* at 897.

**B.** **Versatile is likely to succeed on its copyright claim**

"To prevail on a claim of copyright infringement, a movant must prove (1) ownership of a valid copyright, and (2) copying of original elements, or infringement, of the work. *Stanislawski v. Jordan*, 337 F.Supp.2d 1103, 1108 (E.D. Wisc. 2004) *citing Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361 (1991). "Absent direct evidence, copying may be inferred through a showing that (a) the alleged copier had access to the work and (b) the accused's work is substantially similar to the copyrighted work. *Stanislowski* at 1108, *citing Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 614 (7th Cir.1982) *overruled on other grounds by Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423 (7th Cir.1985).

### 1. Versatile owns the copyrights

Versatile is the owner of U.S. copyright registration no. TX0006411738.  Motosko Decl., ¶ 3.  Versatile also owns the U.S. copyright applications for the promotional video and for the still photos taken from the video.  Griggs Decl., ¶ 5, Ex. D. (video application); Griggs Decl., ¶ 6, Ex. E. (photo application).

### 2. SAS copied Versatile's copyrighted works

As set forth in *Stanislawski*, copying can be inferred by showing that (a) SAS had access to Versatile's copyrighted works and (b) SAS's work is substantially similar to Versatile's copyrighted work.  *See Stanislawski* at 1108.

With respect to the first prong, SAS certainly had access to Versatile's copyrighted works because Versatile provided SAS with the copyrighted works, which SAS initially used under a license from Versatile.  Motosko Decl., ¶ 5.  After the license terminated, SAS continued to use Versatile's copyrighted works without Versatile's permission.  Motosko, Decl., ¶ 6.

As for the second prong, SAS is clearly using photos taken from Versatile's video on its packaging.  Specifically, the packaging for SAS's gardening tool includes a photo wherein the tool is used to mix paint and a photo wherein the tool is used to mix cement.  The photos on SAS's packaging are substantially similar to Versatile's copyrighted work as shown below.

 

*Versatile's Copyrighted Photos*



*SAS's Infringing Photos*

In addition, the instructions included with SAS's product are substantially similar to Versatile's copyrighted instructions. Griggs Decl., ¶ 4, Ex. C. (Versatile's copyrighted instructions), and compare with Griggs Decl., ¶ 8, Ex. G (SAS's instructions). The following table demonstrates the substantial similarity of the two instruction sets:

| Versatile's Copyrighted Instructions | SAS's Infringing Instructions |
|---|---|
| Fits 3/8" or 1/2" cordless or electric drills<br>1/2" thick all-steel construction<br>Augers with sharpened edges<br>Available with 26" extension | FITS: 3/8" or 1/2" CORDLESS OR ELECTRIC DRILLS<br>• All-steel construction<br>• Augers with sharpened edges |
| INSERTING THE Ground Aug INTO THE DRILL<br>-Unplug the drill from the power supply.<br>-Open the chuck jaws of the drill following the drill manufacturer's instructions.<br>-Insert the hexagonal head end of the Ground Aug into the chuck jaws of the drill.<br>-Carefully tighten the chuck jaws around the Ground Aug hexagonal head using the drill manufacturer's instructions. | INSERTING THE AWESOME AUGER™, GROUND AUG INTO A DRILL:<br>• Unplug the power supply.<br>• Open chuck jaws of drill following the drill manufacturer's instructions.<br>• Insert the hexagonal head end of the Awesome Auger™ (or whatever Aug you are using) into the chuck jaws of the drill.<br>• Carefully tighten the chuck jaws around the Awesome Auger™ hexagonal head using the drill manufacturer's instructions. |

| Versatile's Copyrighted Instructions | SAS's Infringing Instructions |
|---|---|
| **REMOVING THE Ground Aug FROM THE DRILL**<br><br>-Unplug the drill from the power supply.<br>-Lay the drill with the Ground Aug on the ground or other horizontal surface. This prevents the ground aug from toppling out of the chuck jaws, when loosened, and causing injury.<br>-Carefully loosen the chuck jaws surrounding the Ground Aug's hexagonal head using the drill manufacturer's instructions.<br>-Carefully lift the Ground Aug from the drill's chuck jaws. | **REMOVING THE AWESOME AUGER™ FROM THE DRILL:**<br>• Unplug the drill from the power supply.<br>• Lay the drill with the Awesome Auger on the ground or other horizontal surface. This prevents the Awesome Auger™ from toppling out of the chuck jaws, when loosened and causing injury.<br>• Carefully loosen the chuck jaws surrounding the Awesome Auger's hexagonal head using the drill manufacturer's instructions.<br>• Carefully lift the Awesome Auger™ from the drill's chuck jaws. |
| **TIPS FOR DRILLING HOLES IN THE DIRT**<br><br>-After the Ground Aug is secured to the drill, plug the drill into the power source.<br>-*The drill control lever must be in the forward rotation position to effectively operate the Ground Aug.*<br>**CAUTION USE LOW SPEED TO START**<br>-Slowly depress the trigger switch to confirm the correct operation of the drill and the forward rotation of the Ground Aug. Repeat this step several times to familiarize yourself with the power of the Ground Aug.<br>-Rest the Ground Aug tip on the dirt, keeping the Ground Aug in a perpendicular position.<br>-Slowly squeeze the drill trigger to begin drilling the hole.<br>-Gradually apply downward pressure to the drill as the Ground Aug loosens and digs into the dirt.<br>-Use the 3" disc for pilot holes or in hard clay or frozen soil.<br>-Use the 4" disc for larger holes, such as post holes and holes for shrubs. | **TIPS FOR DRILLING HOLES IN THE DIRT:**<br>• After the Awesome Auger is secured to the drill, plug the drill into power source. The drill control lever must be in the forward rotation position to effectively operate the Awesome Auger.<br>CAUTION: USE LOW SPEED TO START.<br>• Slowly depress the trigger switch to confirm the correct operation of the drill and the forward rotation of the Auger. Repeat this step several times to familiarize yourself with the power of the Auger.<br>• Rest the Auger tip on the dirt, keeping the Auger in a perpendicular position.<br>• Slowly squeeze the drill trigger to begin drilling the hole.<br>• Gradually apply downward pressure to drill as the Auger loosens and digs into the dirt.<br>• Use 3 inch disk for pilot holes or in hard clay or frozen soil.<br>• Use 4 inch disk for larger holes, such as post holes and holes for shrubs. |
| **USING THE Ground Aug EXTENSION**<br><br>-Insert the hexagonal head of the Ground Aug into the open end of the extension<br>-Align holes in the extension with the holes in the Ground Aug<br>-Insert the locking pin through all holes until the end extends beyond the outside edge of the extension and the hole in the locking pin is visible.<br>-Insert the safety pin into the hole in the locking pin. | **USING THE POWER EXTENDER:**<br>Insert the hexagonal head of the Auger into the open end of the extension.<br>**A.** Align holes in extension with holes in the Auger.<br>**B.** Insert Lock Pin through all the holes until the end extends beyond the outside edge of the Extension and is secure. |





In sum, Versatile previously licensed its copyrighted instructions and photos to SAS. However, SAS has continued to impermissibly use Versatile's copyrighted works after the license terminated. Accordingly, Versatile has proven that it has a "better than negligible" chance at succeeding on the merits with respect to either of its copyright infringement claim. *Ty* at 897.

C.  **Versatile is likely to succeed on its fraudulent representation claim**

"Section 43(a)(2) of the Lanham Act prohibits the use of false or misleading statements or representations of fact in commercial advertising, and establishes a private remedy for any violation thereof." *Abbott* at 13. "The provision applies with equal force to (1) statements which are literally false and (2) statements which, while literally true or ambiguous, convey a false impression or are misleading in context, as demonstrated by actual consumer confusion." *Id*. Again, Versatile need only show that it has a "better than negligible" chance at succeeding on the merits of its fraudulent representation claim against SAS. *Ty* at 897.

SAS's bait-and-switch operation has been discussed in detail above. A portion of the deceptive packaging has been reproduced below, as well as a comparison of Versatile's and SAS's respective auger products. SAS's conduct, i.e., using pictures Versatile's gardening tool, which has a 40" shaft, to sell SAS's gardening tool, which only has a 22" shaft, certainly is the type of conduct prohibited by Section 43 of the Lanham Act. This is a literally false statement – the product shown on the box is not the product that is in the box. In any event, at the very least it is conveys a "false impression" or is "misleading in context." There are numerous instances of actual customer confusion that confirm the deceptive nature of SAS's advertising and packaging. Motosko, Decl. ¶ 7.

 

*SAS's Packaging*          *SAS' gardening tool (top) and Versatile's (bottom)*

Moreover, SAS touts on its packaging that a user can "Dig large holes for planting… in minutes and without bending!" Again, if not literally false – most adults cannot use SAS's product without bending – at the very least it conveys a "false impression" or is "misleading in context" regarding the nature of SAS's product.

When consumers view SAS's advertising and review SAS's packaging, they are likely to believe they are purchasing gardening tool with a 40" shaft because SAS is using pictures of a gardening tool (i.e., Versatile's gardening tool) that has a 40" shaft. Instead, SAS sells them a gardening tool with a 22" shaft. On its face, this is deceitful, leaving consumers feeling ripped off.

Accordingly, Versatile has demonstrated that it has a "better than negligible" chance that it will succeed on the merits of its fraudulent representation claim under Section 43 of the Lanham Act.

## II. Versatile has no adequate remedy at law and is likely to suffer irreparable harm

The Seventh Circuit has "[o]ften recognized that the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." *International Kennel Club of Chicago, Inc., v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). "[T]his readiness to find irreparable injury arises in part from the realization that the most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Id.* (citations omitted) The Seventh Circuit continued, stating that "[e]ven if the infringer's products are of high quality [which they are not here], the plaintiff can properly insist that its reputation should not be imperiled by the acts of another." *Id.*

The Seventh Circuit's fear is precisely what is happening here – SAS is using Versatile's AWESOME AUGER mark to sell an inferior product, and customers are associating SAS's inferior product with Versatile. Accordingly, Versatile has demonstrated that it has no adequate remedy at law and that it is suffering irreparable harm due to SAS's unauthorized use of Versatile's AWESOME AUGER mark and by using photos of Versatile's product to in fact sell SAS's inferior product.

As with trademark infringement, "there is a presumption of irreparable injury where a party has made a showing of copyright infringement." *Stanislawski* at 1117, *citing Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 620 (7th Cir.1982). Thus, Versatile has demonstrated that it is suffering irreparable harm due to SAS's infringing use of Versatile's copyrighted instructions and photos.

## III. The balance of hardships favors Versatile

As discussed above, Versatile is being irreparably harmed by SAS's use of Versatile's AWESOME AUGER mark and copyrighted instructions and photos to compete directly with Versatile, and also by SAS's bait-and-switch operation whereby SAS is advertising Versatile's gardening tool while actually sending customers SAS's gardening tool.

On the other hand, SAS's self-inflicted hardship is no hardship at all, and it should not factor into the balance of hardship analysis. In *Jiffy Lube Int'l v. Weiss Bros.,* 834 F.Supp. 683 (D.N.J. 1993) the court discounted a self-inflicted hardship, i.e., a willful breach of contract, in granting a preliminary injunction:

> To the extent that the defendants suffer significant, and in a sense irreparable, damage from the granting of the preliminary injunction, this harm is a predictable consequence of their willful breach of contract and their misconduct. As such, it is not the type of harm from which we seek to protect a defendant. While a court fashioning an equitable remedy should not impose hardship on a defendant which exceeds that required to protect a plaintiff's legitimate contractual interests, the often painful harm which follows a defendant who willfully breaches a contractual undertaking is not a basis for denying a plaintiff the relief to which it is legally entitled.

*Jiffy Lube* at 693.

The same reasoning applied by the court in *Jiffy Lube* applies to SAS's willful infringement of Versatile's AWESOME AUGER mark and copyrighted instructions and photos, and to SAS's bait-and-switch operation using photos of Versatile's gardening tool product to sell SAS's gardening tool product. Further, after the license terminated SAS could have re-branded and repackaged its products, but instead SAS decided to continue to use Versatile's AWESOME AUGER mark and copyrighted works without Versatile's permission. Accordingly, the balance of hardships weighs in Versatile's favor and in favor of issuing a preliminary injunction.

IV.  **Public Interest**

With respect to Versatile's claims relating to trademark infringement and fraudulent representations, the public interest will be served "because the injunction prevents consumer confusion in the marketplace." *Promatek Industries, Ltd., v. Equitrac Corporation*, 300 F.3d 808, 813-814 (7th Cir. 2002).  In *Abbott* the Seventh Circuit similarly expressed that "the public interest in truthful advertising… lies at the heart of the Lanham Act." *Abbott* at 19.  Accordingly, the public interest factor weighs in favor of Versatile because consumers are best served by preventing confusion arising from SAS's use of Versatile's AWESOME AUGER mark and photos of Versatile's gardening tool to sell SAS's product.  Moreover, consumers should not be misled into purchasing inferior 22" augers when they want a 40" auger.

As for Versatile's copyright infringement claims, "a preliminary injunction is necessary to preserve the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights." *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 620 (7th Cir.1982).  Thus, the public interest will be served by entering a preliminary injunction preventing the unauthorized use of Versatile's copyrighted works.

V.  **Thill and NAT**

The above analysis relating to Versatile's request for a preliminary injunction has focused primarily in on SAS because it is SAS that continues to infringe Versatile's intellectual property rights as discussed above.  Nevertheless, Thill and NAT are equally liable because Thill and Nat (1) import the infringing articles into the United States, (2) distribute the infringing articles to SAS's customers, (3) accept payment from SAS's customers for the infringing articles, and (4) store the infringing articles in their warehouses.  Accordingly, the above discussion applies

equally to Thill and NAT with respect to factors to be considered in the preliminary injunction analysis, which favors entry of a preliminary injunction.

**Conclusion**

WHEREFORE, Versatile respectfully requests that this Court enter a preliminary injunction enjoining SAS, Thill and NAT from (1) infringing Versatile's AWESOME AUGER mark by importing, selling, distributing, advertising, marketing or otherwise using Versatile's AWESOME AUGER mark in connection with SAS's gardening tool product (2) infringing Versatile's copyrighted works, including but not limited to Versatile's copyrighted instructions, promotional video and photographs, and (3) making fraudulent representations relating to SAS's gardening tool product, including but not limited to using photos and/or videos of Versatile's gardening tool to sell SAS's gardening tool.

Respectfully submitted:

Dated: September 9, 2009

s/Michael T. Griggs
Michael J. Gratz
Michael T. Griggs
BOYLE FREDRICKSON S.C.
840 N. Plankinton Ave.
Milwaukee, WI 53203
Telephone: 414-225-9755
Facsimile: 414-225-9753

*Attorneys for Plaintiff Versatile Housewares & Gardening Systems, Inc.*