# EXHIBIT E

# WORLDWIDE DISTRIBUTION AND ROYALTY AGREEMENT

This WORLDWIDE DISTRIBUTION AND ROYALTY AGREEMENT ("Agreement") is dated as of the 19th day of December, 2006, between SAS **Group, Inc.,** a New York corporation, with its principal office located at 200 White Plains Road, Tarrytown, New York 10591 ("Distributor" or "SAS") and **Versatile Housewares and Gardening Systems, Inc.,** a Wisconson corporation, with its principal office located at 100 Dahlen Circle, Cambridge, Wisconson ("Owner").

WHEREAS Owner is the owner of a patent issued by the United States Patent and Trademark office, patent number 6,955,227(the "Patent")

WHEREAS, Distributor desires to arrange for the manufacture of, market, advertise, distribute and sell products, including a ground auger, under the Patent (the "Product") throughout the world at Distributor's own expense under the provisions set forth below;

WHEREAS, as set forth below, Distributor shall pay a royalty to Owner on all sales of the Product throughout the world;

WHEREAS, for so long as this Agreement shall remain in effect, the ownership of the Marks and the Patent shall be assigned to Distributor as set forth below;

WHEREAS, Owner and Distributor desire to enter into and make their respective covenants and agreements provided herein and to otherwise consummate the transactions provided for in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, and intending to be legally bound hereby, the parties hereto agree as follows:

## GRANT OF CERTAIN DISTRIBUTION RIGHTS TO PRODUCT

1. **Grant of Distribution Rights for the Product**

   1.1 **Rights Granted to Licensee:**

   Under the terms set out in this agreement, Owner hereby grants to Distributor the exclusive rights to manufacture, source, advertise, promote, market, sell and otherwise distribute the Product throughout the Territory (defined below) at Distributor's own expense:

**1.2   Term:**

The term of this Agreement shall be for 2 years ("Initial Term") commencing January 1, 2007 with automatic 2 year renewals for so long as Distributor shall comply with all of its obligations under this Agreement ("Renewal Terms").

**1.3   Territory:**

Owner grants to Distributor the exclusive rights to manufacture, source, advertise, promote, market, sell and otherwise distribute the Product throughout the World (the "Territory").   The Patent is a U.S. patent, but Distributor shall exercise the right to advertise, promote, market and sell and otherwise distribute the Product throughout the Territory, at Distributor's discretion.   Distributor agrees to pay a royalty to Owner on all sales throughout the Territory, notwithstanding the fact that the Patent is limited geographically to the United States.

## PURCHASE OF THE PRODUCT

**2.1**   Distributor shall purchase the Product at its sole cost and expense.   Distributor may consult with Owner concerning any issues which may arise or to request recommendations from Owner involving the sourcing of the Product; however Distributor shall have final responsibility and control over sourcing and purchasing of the Product.   Under no circumstances shall Owner have any financial responsibility for the costs of purchasing or marketing the Product.

## ROYALTIES AND REPORTING

**3.1**   Distributor shall pay a royalty on all Net Sales Collected of the Product throughout the Territory.   "Net Sales Collected" shall be revenue received from all sales of the Product for which payment is made by a customer of SAS, less chargebacks for returns and all costs associated with returns, including bad debt, freight and handling charges; and less merchandise or other promotional credits agreed to by Distributor or imposed by a customer of Distributor concerning sales of the Product.

**3.2**   Royalties in Different Trade Channels

**a)**   Distributor shall pay a Royalty of 5% on Net Sales Collected for the Product (the "Retail Royalty") sold wholesale to a Retailer, as defined below.   As used herein, the term "Retailer" shall include retail store chains, retail stores, on-line retailers, mail order retailers or transactional retailers such as QVC or HSN.

**b)**   For units sold directly to consumers via any form of direct response television ("Direct Response Sales"), SAS Group shall pay Owner 3% of Net Sales Collected ("Direct Response Royalty").

3.3     For so long as this Agreement shall remain in effect, each calendar quarter Distributor shall prepare and forward to Owner a royalty report calculating Net Sales Collected and calculating the Retail Royalty and the Direct Response Royalty owed to Owner ("Royalty Report"). The Royalty Report shall be due within 30 days of the end of each calendar quarter. Hence, the report for the first calendar quarter of 2007 shall be due on April 30, 2007 and henceforth at quarterly intervals thereafter.

3.4     Payment of the Royalty owed for each calendar quarter shall me made at the same time as the Royalty Report as set forth in paragraph 3.3 above.

3.5     Distributor agrees to payment of minimum annual royalties of $30,000.00 per year based upon payments for four calendar quarters under the payment terms and timing of payments set forth above. If the royalties accrued for any calendar year do not exceed $30,000.00, (Thirty Thousand Dollars) Owner may terminate this Agreement upon thirty days written notice to SAS Group, unless SAS Group pays Owner the difference between $30,000.00 and the royalties accrued during the calendar year; in which case SAS Group shall retain the rights to the Product for the following twelve (12) month period.

## TERMINATION

4.1     In the event SAS shall fail to make any payment of Royalty as required hereunder, Owner may send a written notice of such failure pursuant to the notice provisions of this Agreement ("Default Notice"). SAS shall have 15 days to cure such failure ("Cure Period"). In the event of a failure to cure a payment default within the Cure Period, this Agreement may be terminated by a notice of termination ("Notice of Termination") which shall be effective 30 days after such notice is given.

4.2     Upon request not more than once per calendar year, Owner may request to see the business records of Distributor concerning Net Sales Collected for the preceding one year period. Distributor shall provide access for Owner to examine such records upon reasonable notice, but no later than 30 days after such request. In the event that Distributor shall fail to provide access to such records as required under this Section, Owner may send a written notice of such failure pursuant to the notice provisions of this Agreement ("Default Notice"). SAS shall have 15 days to cure such failure ("Cure Period"). In the event of a failure to cure such a default within the Cure Period, this Agreement may be terminated by a notice of termination ("Notice of Termination") which shall be effective 30 days after such notice is given.

## SALES OF THE PRODUCT BY OWNER

5.1     Nothing contained herein shall prevent Owner from selling the Product to consumers at pitch fairs, provided all pitch fairs at which the Product is sold are from the list of pitch fairs annexed hereto as Exhibit A. Owner shall not sell the Product at pitch fairs in wholesale quantities and shall not sell the product at pitch fairs to companies or individuals who may become distributors or may attempt to become distributors of the Product.

5.2    Owner shall pay a royalty to Distributor of 5% of Net Sales Collected for all sales which Owner makes at pitch fairs.

5.3    For so long as this Agreement shall remain in effect, each calendar quarter in which Owner shall sell the Product at pitch fairs, Owner shall prepare and forward to Distributor a royalty report calculating Net Sales Collected and calculating the royalty owed to Distributor ("Royalty Report"). The Royalty Report shall be due within 30 days of the end of each calendar quarter.  Hence, the report for the first calendar quarter of 2007 shall be due on April 30, 2007 and henceforth at quarterly intervals thereafter.

5.4    Payment of the Royalty owed by Owner to Distributor for each calendar quarter shall me made at the same time as the Royalty Report as set forth in paragraph 5.3 above.

## INDEMNIFICATION AND HOLD HARMLESS

**6.1    Owner Assumes No Liabilities.**

Owner is not assuming and shall not be responsible for any debts, obligations and/or liabilities of Distributor toward any third party arising in connection with Distributor's performance of its obligations under this Agreement or arising from Distributor's sale or promotion of the Product; Distributor assumes full responsibility for all such obligations.

**6.2    Owner to Indemnify Licensor for Patent Infringement Claims.**

Owner agrees to indemnify, defend and hold harmless Distributor, its officers, directors, employees, affiliates, agents, representatives, successors, assigns, customers and suppliers from and against any and all costs (including legal costs), expenses and claims, disputes, lawsuits, losses, damages or other liability arising from or in any way related to claims of patent infringement which may arise from Distributor's purchase, distribution, marketing or sale of the Product.

## OWNERSHIP OF PATENT

**7.1    Patent to be Assigned to
        Distributor to Be Held During Term of Agreement**

In order to provide Distributor with control over the Patent during the term of this Agreement, Owner shall assign to Distributor the Patent, which assignment shall be registered with the United States Patent and Trademark Office.   Distributor shall bear all costs and expenses associated with recording the assignment of the Patent.

### 7.2    Transfer of Patent Back to Licensor

The Patent shall remain in the name of Distributor during the term of this Agreement until such time, if ever, that Owner shall terminate this Agreement as provided under Section 4 above. In the event this Agreement is terminated, Distributor shall at the request of Owner assign all rights to the Patent back to Owner, and Owner shall bear all costs and expenses in connection with recording such assignment.

### 7.3    Execution of Assignments

Owner shall execute the assignment of the Patent on the form annexed as Exhibit B.

## GOVERNING LAWS AND JURISDICTION

### 8.1    New York Law Shall Apply

Interpretation and enforcement of this Agreement shall be construed and governed by the laws of the State of New York, without regard to choice of law principles.

### 8.2    Jurisdiction

Any dispute which may arise under this Agreement or concerning any business dispute between the parties to this Agreement, shall be resolved by the State or Federal Courts located in the State of New York, Westchester County. The parties agree to submit to the jurisdiction of all such courts for the purpose of resolving any such dispute(s). The judgment of such court(s) shall be granted full faith and credit by the courts of all such other countries where the parties may be located at the time such judgment is entered.

## OWNER'S REPRESENTATIONS AND WARRANTIES

The Owner hereby represents, covenants and warrants to Distributor as follows:

**9.1    Organization; Standing.** Owner is a corporation duly organized, validly existing and in good standing under the laws of Wisconson.

**9.2    Authority, Etc.**   Owner has full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby, and this Agreement constitutes the legal, valid and binding agreement of Owner, enforceable in accordance with its terms except that (i) such enforcement may be subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights and (ii) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefore may be brought.

9.3    Consents.  There are no notifications, filings, registrations, authorizations, permissions, permits, consents, licenses or requirements necessary to be obtained by Owner for the consummation of the transactions contemplated by this Agreement, including without limitation, consents from governmental agencies, whether federal, state or local.

## MISCELLANEOUS PROVISIONS

10.1    Notices.  Any notice or other communication to be given pursuant to this Agreement shall be in writing and shall be deemed to have been duly given if (i) personally delivered with proof of delivery thereof or sent by telefax (confirmed thereafter by regular United States mail sent within 24 hours) (any notice or communications so delivered being deemed to have been received at the time delivered), or (ii) sent by United States registered or certified mail, postage prepaid (any notice or communication so sent being deemed to have been received three (3) business days after mailing in the United States); (iii) by a nationally recognized overnight courier service (any notice or communications so sent being deemed to have been received at the time delivered); or (iv) by e-mail and confirmed thereafter by regular United States mail sent within 24 hours (any notice or communications so delivered being deemed to have been received at the time delivered) ; in each case addressed to the respective parties as follows:

(a)    If to the Owner, to:    Versatile Housewares and Gardening Systems, Inc.
100 Dahlen Circle,
Cambridge, Wisconsin Motoskd
Attn:        Tom Mostosko
E-Mail:      versatilehswe@smallbytes.net

or to such other person(s) or address(es) as the Owner shall furnish to Distributor in writing.

(b)    If to Distributor, to:    SAS Group, Inc.
200 White Plains Road
Tarrytown, New York 10591
Attn:   Scott Sobo
E-Mail: scott.sobo@sasgroup.com

(with a copy to:)    Kevin J. Harrington, Esq.
Harrington, Ocko & Monk, LLP
81 Main Street, Suite 215
White Plains, NY  10601
E-Mail: kharrington@homlegal.com

or to such other person(s) or address(es) as Distributor shall furnish to the Owner in writing.

10.2    Assignment. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the parties hereto without the prior written consent of the other parties, except that Distributor may assign this Agreement to any entity in which Scott Sobo and/or Michael Sobo has an ownership interest.

10.3   **Confidentiality.**   All parties hereto agree to keep the terms of this Agreement confidential and to not disclose any information contained herein except to the extent that such information is necessary to the consummation of the transactions contemplated herein.

10.4   **Counterparts.** This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.5   **Headings.** The headings of the Sections and Articles of this Agreement are inserted for convenience only and shall not constitute a part hereof or affect in any way the meaning or interpretation of this Agreement.

10.6   **Entire Agreement.** This Agreement, including the Exhibits and Schedules hereto, and other documents and certificates delivered pursuant to the terms hereof, set forth the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein, and supersede all prior agreements, promises, covenants, arrangements, communications, representations or warranties, whether oral or written, by any employee or representative of any party hereto.  Any modification of this Agreement must be in writing, signed by both of the parties to this Agreement and expressly stating that it is the intent of both such parties by such writing to modify the terms of this Agreement.

10.7   **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law.  However, if any provision of this Agreement shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

**10.8.   Facsimile Execution.**   This Agreement may be executed and delivered by electronic or facsimile (including scanning) transmission with the same force and effect as if it were executed and delivered by the parties simultaneously in the presence of one another and signatures on a facsimile or electronic copy hereof shall be deemed authorized original signatures.

IN WITNESS WHEREOF, the parties hereto have caused this Worldwide Distribution and Royalty Agreement to be duly executed all as of the day and year first above written.

*Distributor*                                              *Owner*

SAS GROUP, INC.                              *VERSATILE HOUSEWARES AND GARDENING SYSTEMS, INC*

By: _____      By: _____  12/20/06
Scott Sobo,                                            Tom Mostosko
President                                              President

# PATENT ASSIGNMENT AGREEMENT

THIS AGREEMENT is made this 19th day of December, 2006, by and between **Thomas P. Montosko_** ("Inventor"), whose business address is 100 Dahlen Circle, Cambridge, Wisconson; **Versatile Housewares and Gardening Systems, Inc.** ("Assignor"), whose business address is 100 Dahlen Circle, Cambridge, Wisconson;  and **SAS Group, Inc.** ("Assignee"), whose business address is whose business address is 200 White Plains Road, Tarrytown, New York 10591. (collectively, the "Parties")

WHEREAS, Inventor or has invented  an auger for mixing and burrowing (the "Invention"), and has been granted United States Letters Patent for said invention, Patent No. 6,955,227 (the "Patent"), granted on the patent application filed with the United States Patent and Trademark Office, Patent Application Number 10/251,731 (the "Patent Application").

WHEREAS, Inventor has prior to the date hereof, assigned all right title and interest in the Patent to Versatile Housewares and Gardening Systems, Inc. ("Assignor"), whose business address is 100 Dahlen Circle, Cambridge, Wisconson.

WHEREAS, Inventor owns a controlling interest in Assignor.

WHEREAS, Assignee wishes to acquire all right, title and interest in the Patent, and Inventor and Assignor wish to convey and transfer their interest(s) in the Patent to Assignee.

NOW THEREFORE, in consideration of the mutual promises, covenants, warranties, and other good and valuable consideration set forth herein, the Parties agree as follows:

1.  Assignment.  Inventor and Assignor hereby assign to Assignee, and its successors, representatives and assigns, all of their respective rights, title and interest in and to the Patent including all reexaminations, extensions and reissues thereof, the same to be held and enjoyed by the said Assignee for its own use and for the use of its legal successors and assigns, to the full end of the term for which the Patent has been granted, as fully and entirely as the same would have been held by Inventor or Assignor had this assignment not been made.  Inventor and Assignor hereby request the Commissioner of Patents of the United States to record this assignment of all right, title and interest in the Patent to Assignee.

2.  Consideration.  In consideration of the assignment of the Patent pursuant to this Agreement, and of the promises and covenants contained herein, Assignee shall pay to Assignor monetary consideration as provided in a certain Worldwide Distribution and Royalty Agreement dated December 19, 2006 between Assignee and Assignor, a company in which Inventor holds a controlling ownership interest.

3. Inventor's and Assignor's Representations and Warranties. Inventor and Assignor each hereby represent and warrant that they have the legal right and authority to execute this Agreement, and to validly assign the entire interest in the Patent to Assignee. Inventor represents that he has previously assigned his entire right, title and interest in the Patent to Assignor, a company in which Inventor holds a controlling ownership interest, but to the extent, if any that Inventor retains any right, title or interest in the Patent notwithstanding such assignment, Inventor herein coveys all such right, title and interest in and to the Patent to Assignee. Inventor and Assignor further represent and warrant that neither of them has executed any other agreement that would conflict with the terms of this Agreement, nor shall either of them execute any such agreement in the future.

4. Further Actions. Inventor and Assignor hereby agree to execute any further agreements and to take any further actions necessary to aid Assignee in perfecting its interest in the Patent and in enforcing any and all protections or privileges deriving from the Patent and to take any action which may need to be taken from time to time with the United States Patent and Trademark Office to continue to allow Assignee to enjoy all protections and privileges deriving from the Patent and to secure the continued enforceability and good standing of the Patent.

5. Governing Law. This Agreement shall be construed in accordance with, and governed in all respects by, the laws of the State of New York, without regard to conflicts of law principles. Any dispute concerning this assignment shall be resolved by courts located in the State of New York and the Parties consent to the jurisdiction of such courts for that purpose.

6. Counterparts. This Agreement may be executed in several counterparts, each of which shall constitute an original and all of which, when taken together, shall constitute one agreement.

7. Severability. If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

8. Notice. Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service, addressed as follows:

If to Assignor:   Versatile Housewares and Gardening Systems, Inc.
                  100 Dahlen Circle,
                  Cambridge, Wisconson
                  Attn:          Tom Mostosko

If to Assignee:   SAS Group, Inc.
                  200 White Plains Road
                  Tarrytown, New York 10591
                  Attn:   Scott Sobo

(with a copy to:)  Kevin J. Harrington, Esq.
                   Harrington, Ocko & Monk, LLP
                   81 Main Street, Suite. 215
                   White Plains, NY  10601

9. Headings.  The headings for section herein are for convenience only and shall not affect the meaning of the provisions of this Agreement.

10. Entire Agreement.  This Agreement constitutes the entire agreement between Assignor and Assignee documenting the assignment of this Patent, and this Agreement, taken together with the Worldwide Distribution and Royalty Agreement between the Parties dated December 19, 2006, supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement other than the Worldwide Distribution and Royalty Agreement dated December 19, 2006, which incorporates this Patent Assignment Agreement by reference.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.

**INVENTOR**
**Thomas P. Montosko**

Signature
Name:   Thomas P. Montosko

**ASSIGNOR**
**Versatile Housewares and Gardening Systems, Inc.**

Signature
By:   Thomas P. Montosko, President

**ASSIGNEE**
**SAS Group, Inc.**

Signature
By:   Scott Sobo, Vice President

State of Wisconsin                              )
                                                )
County of _____DANE_____ ) ss

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY THAT **Thomas P. Montosko,** personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and notarial seal, this _22_ day of _December_, 20 _06_.

_Susan A. Christianson_
Signature of Notary Public

(Seal)
_Susan A. Christianson_
Printed Name of Notary

My commission expires on _October 14_, 20_07_.

State of  Wisconsin       )
                          )
County of  _Dane_         ) ss

*Patent Assignment Agreement*

5

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY THAT **Thomas P. Montosko, as President of Versatile Housewares and Gardening Systems, Inc.,** personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his/her/their free and voluntary act, with the full authority of the Board of Directors of said company for the uses and purposes therein set forth.

Given under my hand and notarial seal, this _____22_____ day of December, 2006.

_Susan A. Christianson_
Signature of Notary Public

(Seal)
_Susan A. Christianson_
Printed Name of Notary

My commission expires on _October 14_ ,20_07_.


State of New York                          )
                                           )
County of Westchester                      ) ss


I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY THAT Scott Sobo, as **Vice President of SAS Group, Inc.** personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his/her/their free and voluntary act, with the full authority of the Board of Directors of said company, for the uses and purposes therein set forth.

Given under my hand and notarial seal, this _27 TH_ day of December, 2006.

_Jacqueline Knapp_
Signature of Notary Public

JACQUELINE KNAPP
NOTARY PUBLIC, State of New York
No. 01KN5018441
Qualified in Westchester County
Commission Expires September 27, 20_09_

(Seal)
_Jacqueline Knapp_
Printed Name of Notary

My commission expires on _September 27_ ,20_09_.


*Patent Assignment Agreement*                                          6