UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VERSATILE HOUSEWARES & GARDENING
SYSTEMS, INC.,

                    Plaintiff,

        -v-

THILL LOGISTICS, INC.; SAS GROUP, INC.; NAT,
LLC; and JORDAN DREW CORPORATION,

                    Defendants.

---

SAS GROUP, INC., and JORDAN DREW
CORPORATION,

                    Counterclaim and Third-
                    Party Plaintiffs

        -v-

VERSATILE HOUSEWARES & GARDENING
SYSTEMS, INC.,

                    Counterclaim and Third-
                    Party Defendants.

No. 09-CV-10182 (KMK) (PED)

OPINION AND ORDER

---

Appearances:

Michael J. Gratz, Esq.
Michael T. Griggs, Esq.
Boyle Fredrickson, S.C.
Milwaukee, WI
*Counsel for Plaintiff-Third-Party-Defendant Versatile Housewares & Gardening Systems, Inc.*

Kevin J. Harrington, Esq.
John T. A. Rosenthal, Esq.
Harrington, Ocko & Monk LLP
White Plains, NY
*Counsel for Defendant-Third-Party-Plaintiffs SAS Group, Inc., and Jordan Drew Corporation*

Andrew Wagener, Esq.
Bollenbeck Wagener Spaude & Fyfe, S.C.
Appleton, WI
*Counsel for Defendants Thill Logistics, Inc., and NAT, LLC*

KENNETH M. KARAS, District Judge:

Plaintiff Versatile Housewares & Gardening Systems, Inc., ("Versatile") brought this action in September 2009 against Defendants Thill Logistics, Inc., ("Thill"), SAS Group, Inc., ("SAS"), NAT, LLC ("NAT"), Jordan Drew Corp. ("Jordan Drew"), Michael Sobo, Scott Sobo, and Gene Sobo.  (Second Am. Compl. ("SAC") (Dkt. No. 160) ¶¶ 3-10.)  The Complaint contains claims under both federal and state law for trademark infringement, false advertising, copyright infringement, fraudulent trademark registration, and breach of contract.  Following the case's transfer to this Court by the U.S. District Court for the Eastern District of Wisconsin (Dkt. No. 28), Defendants SAS and Jordan Drew answered the Complaint and asserted a number of counterclaims against Versatile.[1]  (Dkt. No. 33.)  In the counterclaim that is the subject of the pending motions, SAS asserts that Versatile breached the Worldwide Distribution & Royalty Agreement ("Distribution Agreement"), entered into between Versatile and SAS on December 22, 2006 (Decl. of Michael T. Griggs ("Griggs Decl.") (Dkt. No. 131) Exh. A.), by bringing this action originally in Wisconsin in violation of the Distribution Agreement's forum selection clause.  The Parties have filed cross-motions for summary judgment on this claim.  For the reasons stated herein, SAS's motion is DENIED to the extent SAS seeks damages in the form of attorneys' fees but GRANTED to the extent SAS seeks other damages, and Versatile's motion is DENIED except to the extent SAS seeks attorneys' fees, and in that respect Versatile's motion is

---

[1] The Court will refer to SAS and Jordan Drew collectively as "SAS" for purposes of these motions.

GRANTED.

I.  Background

A.  Facts

The facts of the underlying action are largely irrelevant to the pending motions, so what follows is only a brief summary, as alleged by the Parties.  Between 2000 and 2004, Versatile, a company based in Cambridge, Wisconsin, developed three versions of a gardening tool designed primarily for the disabled and began selling them under the trademarks "Ground Aug," "Awesome Auger," and "Weed Aug."  (SAC ¶¶ 3, 17-20.)  In October 2005 Versatile acquired U.S. Patent 6,955,227 ("the '227 patent"), the scope of which is disputed.  (Id. ¶ 21.)[2]  In November 2006 Versatile and SAS began negotiating a distribution agreement for Versatile's tools.  (Decl. of Scott Sobo in Supp. of Def./Counterclaim and Third-Party Pl. SAS Group, Inc.'s Mot. for Partial S.J. ("Sobo Decl.") (Dkt. No. 117) ¶ 3).  These negotiations culminated in the parties executing two agreements in late December 2006: the Distribution Agreement, whereby SAS acquired exclusive rights to manufacture, sell, and market the tools allegedly covered by the '227  patent in exchange for royalty payments to Versatile (Distribution Agreement ¶¶ 1.1, 3.1); and a Patent Assignment Agreement (Griggs Decl. Exh. B.), whereby Versatile assigned the '227 patent to SAS.  (Versatile Rule 56.1 Statement (Dkt. No. 129) ¶¶ 1, 3; Sobo Decl. ¶¶ 4, 8.)

The agreements both contain forum selection clauses designating New York as the parties' chosen forum for resolving any disputes that might arise relating to them.  The

---

[2] It is also unclear from its complaint what Versatile believes the '227 patent covers. Versatile states only that it "filed a patent application directed to one variation of gardening tools" in September 2002, and that the '227 patent "issued from that application on October 18, 2005."  (SAC ¶ 21.)

Distribution Agreement provides that its "[i]nterpretation and enforcement" are to be governed

by New York law, (Distribution Agreement ¶ 8.1), and that:

> [a]ny dispute which may arise under this Agreement or concerning any business
> dispute between the parties to this Agreement, shall be resolved by the State or
> Federal Courts located in the State of New York, Westchester County.  The
> parties agree to submit to the jurisdiction of all such courts for the purpose of
> resolving any such dispute(s).  The judgment of such court(s) shall be granted full
> faith and credit by the courts of all such other countries where the parties may be
> located at the time such judgment is entered.

(*Id.* ¶ 8.2.)  Similarly, the Patent Assignment Agreement provides:

> This agreement shall be construed in accordance with, and governed in all
> respects by, the laws of the State of New York, without regard to conflicts of law
> principles.  Any dispute concerning this assignment shall be resolved by courts
> located in the State of New York and the Parties consent to the jurisdiction of
> such courts for that purpose.

(Patent Assignment Agreement ¶ 5.)

In June 2008, SAS stopped making royalty payments to Versatile.  (SAC ¶ 36.)

According to SAS, this was after it came to SAS's attention that Versatile was selling a

competing gardening tool that was nearly identical to that distributed by SAS.  (Sobo Decl. ¶

10.)  Until that point, SAS had believed that Versatile's new product was covered by the '227

patent, which had been assigned to SAS pursuant to the Patent Assignment Agreement.  (*Id.* ¶

18; Exh. D, at 2.)  SAS then "conducted a review" of the '227 patent and the product which SAS

had been selling under the trademark "Awesome Auger," and determined that this product "did

not fall within the claims of" the patent.  (*Id.* ¶¶ 11-12.)  Because of this, SAS cut off its royalty

payments and demanded both reimbursement of all previously paid royalties and so-called

"reverse royalty" payments from Versatile.  (*Id.* ¶ 15; Exh. D, at 2-3.)  Meanwhile, Versatile

alleges, although it was understood between the parties that Versatile would maintain ownership

of the products' trademarks (SAC ¶¶ 26-30), when SAS stopped making royalty payments it

nevertheless also filed its own trademark applications for the "Awesome Auger," "Ultimate Awesome Auger," and "Ultimate Auger" marks on behalf of Jordan Drew, an affiliated company, (*id.* ¶¶ 37-38).  Versatile alleges that SAS acquired these marks by making false and misleading statements to the U.S. Patent and Trademark Office concerning the ownership of the "Awesome Auger" mark.  (*Id.* ¶ 37.)

The Distribution Agreement terminated on January 1, 2009, Versatile alleges, due to SAS's failure to make its royalty payments.  (SAC ¶ 39; *see also* Distribution Agreement ¶ 1.2 (providing for automatic two-year renewals from January 1, 2007, "for so long as [SAS] shall comply with all its obligations under this Agreement").  During the spring and summer of 2009, both parties sought royalty payments and reimbursements that each allegedly owed the other.  (SAC ¶¶ 40-43; Sobo Decl. ¶¶ 16-18.)

B.  Procedural History

Versatile filed the initial complaint in this action in the Eastern District of Wisconsin on September 3, 2009.  (Compl. (Dkt. No. 1).)  Versatile's Complaint asserted claims for violations of the Lanham Act and Copyright Act, for trademark infringement under Wisconsin law, and for common law trademark infringement, fraud, and breach of the Distribution Agreement.  (*Id.* ¶ 1.) Versatile named SAS and Jordan Drew as defendants, as well as two Wisconsin corporations, Thill Logistics, Inc., ("Thill") and NAT, LLC ("NAT"); Versatile alleged that Thill and NAT acted essentially as distributors of SAS's allegedly infringing products within Wisconsin.  (*Id.* ¶¶ 2, 5-6, 63-65.)

As relevant to the pending motions here, SAS and Jordan Drew moved to dismiss the case for improper venue and lack of personal jurisdiction or, in the alternative, to transfer the case to this Court, pointing to the forum selection clauses of the Distribution and Patent

5

Assignment Agreements.  (Dkt. No. 13; Defs. SAS Group, Inc. & Jordan Drew Corp.'s Br. in

Supp. of Their Mot. to Dismiss (Dkt. No. 14) 9.)  On December 4, 2009, the Wisconsin District

Court entered an order transferring the case to this Court pursuant to 28 U.S.C. § 1404(a), based

on those provisions.  *See Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*,

No. 09-CV-846, 2009 WL 4730825 (E.D. Wis. Dec. 7, 2009) (Dkt. No. 28) ("*Versatile Transfer*

*Order*").  The court first determined that the clauses were "mandatory" rather than "permissive,"

meaning that the parties had agreed to "vest[] jurisdiction and venue exclusively" where the

clauses specified.  *Id.* at *4.  The court rejected Versatile's argument that the clauses constituted

mere consents to jurisdiction in New York, pointing to the mandatory nature of the language in

the clauses, which required that "[a]ny dispute . . . shall be resolved" by the courts in

Westchester County, New York.  *Id.* (quoting Distribution Agreement ¶ 8.2).  The court went on

to conclude that enforcement of the forum selection clauses would not be unreasonable or unjust,

rejecting Versatile's arguments that several of its claims were not covered by the clauses, *id.* at

*4-5, and finding that convenience and judicial economy would be served by the transfer, *id.* at

*5-6.

     After the transfer, this Court denied the Parties' competing motions for preliminary

injunctions in April 2010.  (Dkt. No. 96.)  SAS then filed a motion for partial summary judgment

on its counterclaim on June 18, 2010.  (Dkt. No. 113.)  It contends that Versatile's decision to

bring this action originally in Wisconsin constituted a knowing breach of the mandatory forum

selection clause of the Distribution Agreement, and that SAS is therefore entitled to all damages

stemming from Versatile's breach, including the attorneys' fees and costs expended to defend

this case in Wisconsin and litigate its transfer to this Court.  (Mem. of Law in Supp. of

Def./Counterclaim and Third-Party Pl. SAS Group, Inc.'s Mot. for Partial S.J. (Dkt. No. 115)

("SAS Mem.") 10-12.)  SAS and Jordan Drew seek a total of $37,269.71 in damages; this figure

includes the nearly $11,000 paid to local Wisconsin counsel and nearly $25,000 to SAS's current

counsel, along with prejudgment interest.  (*Id.* at 11-12.)  Versatile cross-moved for summary

judgment on the counterclaim (Dkt. No. 127), contending that New York law does not allow for

the recovery of attorneys' fees under these circumstances and that the damages SAS seeks are

excessive.  (Pl.'s Mem. of Law in Supp. o[f] Its Mot. for Partial S.J. and in Opp'n to SAS's Mot.

for Partial S.J.  (Dkt. No. 128) ("Versatile Mem.") 2, 5.)  The Court held oral argument on these

motions on November 10, 2010.  The Court denied both motions without prejudice in March

2010, after the Parties informed the Court that they were engaged in settlement discussions.

(Dkt. No. 151.)  These proved unsuccessful, and earlier this month the Parties asked to have the

motions reinstated.

## II.  Discussion

### A. Standard of Review

#### 1.  Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment should be granted

if the moving party shows that "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When ruling on a

summary judgment motion, the . . . [C]ourt must construe the facts in the light most favorable to

the non-moving party and must resolve all ambiguities and draw all reasonable inferences

against the movant."  *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

"Where, as here, cross motions for summary judgment are filed, [the Court] evaluate[s] each

party's motion on its own merits, taking care in each instance to draw all reasonable inferences

against the party whose motion is under consideration."  *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d

Cir. 2010) (internal quotation marks omitted).  Although the Parties dispute a good deal of the

facts of this case, and discovery with respect to the other claims is ongoing, the facts relevant to

these particular motions are few and largely undisputed.  The motions instead turn on the Court's

resolution of questions of New York state law, which applies here.[3]

### 2.  New York State Law

In the absence of a definitive ruling from the New York Court of Appeals, the Court's

task in deciding issues of New York law is to "predict how the state's highest court would

resolve" those issues.  *Runner v. N.Y. Stock Exchange, Inc.*, 568 F.3d 383, 386 (2d Cir. 2009)

(quoting *The Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005)).  The Court

"construe[s] and appl[ies] state law as it believes the state's highest court would," and will not

"adopt innovative theories that may distort established state law."  *Liddle & Robinson, LLP v.*

*Garrett*, 720 F. Supp. 2d 417, 424 (S.D.N.Y. 2010) (alterations and internal quotation marks

omitted).  Absent a Court of Appeals ruling directly on point, the Court will make its prediction

based on other decisions of New York courts, giving "the fullest weight to pronouncements of

the state's highest court" and "proper regard to relevant rulings of the state's lower courts."

*Runner*, 568 F.3d at 386 (quoting *Carpenter*, 411 F.3d at 329).  The Court looks to the decisions

of the Appellate Division as "helpful indicators of how the Court of Appeals would decide" an

issue, but is "not strictly bound" by them if there is "persuasive data" in Court of Appeals

---

[3] Specifically, both the Distribution Agreement and the Patent Assignment Agreement
indicate that New York law should govern their interpretation and enforcement.  (*See*
Distribution Agreement ¶ 8.1; Patent Assignment Agreement ¶ 5.)  Moreover, the Parties agree
that New York law applies to the questions raised by these motions.  *See Motorola Credit Corp.*
*v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) ("Here, the parties' briefs assume that New York law
controls this issue, and such implied consent is sufficient to establish choice of law." (internal
quotation marks and alteration omitted)).

decisions that would suggest that court would "decide otherwise."  *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007) (internal quotation marks omitted); *see also New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 211 (2d Cir. 2006) ("[T]he judgment of an intermediate appellate state court 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" (quoting *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967))).  The Court also will consider the "decisions of federal courts construing state law, in particular the circuit court within whose jurisdiction the state at issue is located," *In re West Pan, Inc.*, 372 B.R. 112, 121 (S.D.N.Y. 2007), keeping in mind that the New York state courts "are the ultimate expositors of state law," *Portalatin v. Graham*, 624 F.3d 69, 89 (2d Cir. 2010) (en banc) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).

B.  Analysis

    1.  SAS's Entitlement to Damages

        To recover on its breach of contract claim, SAS must prove that: "(1) a contract existed between the parties; (2) [SAS has] in all respects complied with [its] obligations; (3) [Versatile's] alleged failure constitutes a failure to perform its obligations under the contract; and (4) [SAS has] been damaged as a result of the defendant's actions."  *Weiss v. La Suisse, Societe D'assurances Sur La Vie*, 226 F.R.D. 446, 451 (S.D.N.Y. 2005).  If it proves breach of contract, SAS may recover both "general (or direct) damages, which compensate for the value of the promised performance, and consequential damages, which are indirect and compensate for additional losses incurred as a result of the breach . . . ."  *Appliance Giant, Inc. v. Columbia 90 Assocs., LLC*, 779 N.Y.S.2d 611, 613 (App. Div. 2004); *see also Bi-Econ. Market, Inc. v. Harleysville Ins. Co. of N.Y.*, 886 N.E.2d 127, 130 (N.Y. 2008) ("It is well settled that in breach

of contract actions the nonbreaching party may recover general damages which are the natural and probable consequence of the breach.  Special, or consequential damages . . . are also recoverable in limited circumstances." (citation and internal quotation marks omitted)).

Versatile concedes that a party may recover damages for breach of a forum selection clause as a general matter.  (Pl.'s Reply in Supp. of Its Mot. for Partial S.J. and Further Opp'n to Def.'s Mot. for Partial S.J. (Dkt. No. 132) ("Versatile Reply") 4.)  This is consistent with New York law: not only has the First Department squarely held as much, in a case this Court will discuss further below, *see Indosuez Int'l Fin., B.V. v. Nat'l Reserve Bank*, 758 N.Y.S.2d 308, 311 (App. Div. 2003), but the New York Court of Appeals also has long held that any breach of a contract allows the non-breaching party the ability to recover at least nominal damages, *see, e.g.*, *Finley v. Atl. Transport Co.*, 115 N.E. 715, 718 (N.Y. 1917); *see also Tradex Europe SPRL v. Conair Corp.*, No. 06-CV-1760, 2008 WL 1990464, at *5 (S.D.N.Y. May 7, 2008) (applying New York law); *Hirsch Elec. Co. v. Cmty. Servs., Inc.*, 536 N.Y.S.2d 141, 143 (App. Div. 1988) (reaffirming non-breaching party's right to at least nominal damages).  Nothing suggests New York courts would treat forum selection clauses differently in this respect from any other contract provision.  *See Sterling Nat'l Bank ex rel. NorVergence, Inc. v. E. Shipping Worldwide, Inc.*, 826 N.Y.S.2d 235, 237 (App. Div. 2006) ("[I]t is the well-settled policy of the courts of this State to enforce contractual provisions for choice of law and selection of a forum for litigation." (internal quotation marks omitted)); *see also Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 376 (7th Cir. 1990) ("[T]he only good reason for treating a forum selection clause differently from any other contract . . . is the possibility of adverse effects on third parties.  Where that possibility is slight, the clause should be treated like any other contract.").

Versatile raises three arguments why the Court nevertheless may not award damages in

10

this case.  First, Versatile contends that New York law prohibits a damages award, both in general and specifically with respect to the award of attorneys' fees, when the non-breaching party has already received an equitable remedy against the same breach.  (Versatile Mem. 2; Versatile Reply 2 n.2.)  According to this argument, the Eastern District of Wisconsin's decision to transfer this case to this Court — in effect an order granting SAS specific performance of the forum selection clause — cured any breach that occurred when Versatile filed the action in Wisconsin initially, and, therefore, SAS is not entitled to any damages as an additional remedy. Second, Versatile argues that an award of damages here — which would in substance require Versatile to pay SAS's attorneys' fees for the Wisconsin portion of this litigation — would contravene the general rule in New York that attorneys' fees are "incidents of litigation" and thus not recoverable by the prevailing party except under specific circumstances not present here.  (Versatile Mem. 2-3; Versatile Reply 3-4.)  Finally, in its reply submission, Versatile asserts, without explanation, that a question of fact exists regarding whether its actions constituted a breach of the forum selection clause at all.  (Versatile Reply 1 n.1.)

### a.  Breach of the Forum Selection Clause

The Court will address this last argument first.  In its reply brief, Versatile notes that the Eastern District of Wisconsin, in ordering the case transferred to this Court, did not actually conclude that Versatile had breached the forum selection clause; the court "merely enforced" the clause by ordering the transfer.  (Versatile Reply 1 n.1.)  Versatile asserts, without analysis, that a genuine issue of fact therefore exists with respect to whether Versatile in fact did breach the clause, precluding summary judgment in favor of SAS.  (*Id.*)  Even if the Court were to credit this argument, *see Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 592 n.15 (S.D.N.Y. 2010) ("The Court . . . will not favorably consider an argument initially made in

a reply brief."), it is without merit.

First, whether Versatile breached the Distribution Agreement is, in this case, a question that can be resolved on summary judgment because the only relevant facts — that Versatile brought this action in Wisconsin and the text of the forum selection clause — are undisputed, and Versatile has not explained why the language of the clause is ambiguous. *See Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment."). Second, the Transfer Order concluded that the clause was "mandatory," *Versatile Transfer Order*, 2009 WL 4730825, at *4, meaning that the clause contained language "indicating the parties' intent to make jurisdiction exclusive" in the designated forum, *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010) (internal quotation marks omitted). Versatile may not attempt to re-litigate this finding, for "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (citation and internal quotation marks omitted). This rule is discretionary, of course, *see RSL Commc'ns PLC v. Bildirici*, 649 F. Supp. 2d 184, 204 (S.D.N.Y. 2009), but Versatile has pointed to nothing that would give this Court cause to revisit the Transfer Order's conclusion, *see Jamison v. Senkowski*, No. 99-CV-9424, 2010 WL 2010884, at *2 (S.D.N.Y. May 18, 2010) (noting exceptions to law of the case doctrine include "intervening change in controlling law," "new evidence discovered," and the "need to correct a clear error of law or to prevent manifest injustice" (internal quotation marks omitted)). Indeed, Versatile gives no explanation at all for its argument, merely an assertion that a "genuine issue of material fact" exists (Versatile Reply 1 n.1) — an assertion insufficient to

overcome a properly supported motion for summary judgment, *see Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 370 n.3 (2d Cir. 2003).

In light of the Transfer Order's conclusion that the purpose of the clause was to vest jurisdiction and venue exclusively in Westchester County, New York, and applying the well-established rule that contracts in New York are to be interpreted in light of the parties' intent, *see Nash v. Bd. of Educ.*, 345 N.E.2d 575, 576 (N.Y. 1976), the Court concludes that the clause creates an obligation on the parties to *bring* all actions falling within the clause's scope, including this action, in the chosen forum, and that Versatile consequently breached this obligation by bringing this action in Wisconsin. *See Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 992 F. Supp. 278, 285 (S.D.N.Y. 1998) (party that brought anticipatory declaratory judgment action in foreign forum in an attempt to evade the terms of a forum selection clause requiring it to submit to jurisdiction in the United States breached the clause because the foreign action was an "opportunistic attempt to evade the effect of the clause"); *cf. Ball v. Versar, Inc.*, 454 F. Supp. 2d 783, 809-10 (S.D. Ind. 2006) (after district court had transferred case pursuant to 28 U.S.C. § 1404(a) *without* concluding that forum selection clause was mandatory, transferee court determined *de novo* that plaintiff in original action had not breached the clause).

### b.  SAS's Entitlement to a Damages Award in Addition to the Venue Transfer

As noted earlier, a plaintiff in a breach of contract action may recover both general and consequential damages — amounts that compensate the plaintiff both for the value of the promised performance and for additional losses the plaintiff suffered due to the failure to perform. *See, e.g.*, *Schonfeld v. Hilliard*, 218 F.3d 164, 175-76 (2d Cir. 2000) (applying New York law); *Appliance Giant*, 779 N.Y.S.2d at 613 (same). These two classes of damages are awarded in "the amount necessary to put the aggrieved party in as good a position as it would

have been had the contract been fully performed." *McKinley Allsopp, Inc. v. Jetborne Int'l, Inc.*, No. 89-CV-1489, 1990 WL 138959, at *8 (S.D.N.Y. Sept. 19, 1990) (citing *Kenford Co. v. Cnty. of Erie*, 493 N.E.2d 234, 235 (1986)); *see also Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs. P.C.*, 657 N.Y.S.2d 787, 788 (App. Div. 1997) (same).

These principles apply not only to contract actions seeking solely money damages, but also to actions in equity seeking specific performance of contracts.  It is well established in New York law that "[t]here is no inconsistency between an action for specific performance and an action for breach of contract." *Judnick Realty Corp. v. 32 W. 32nd Street Corp.*, 462 N.E.2d 131, 133 (N.Y. 1984).  Therefore, where a party seeks specific performance of a contract, New York courts will award, "in addition to specific performance of the contract, such items of damage as naturally flow from the breach, are within the contemplation of the parties, and can be proven to a reasonable degree of certainty." *Freidus v. Eisenberg*, 510 N.Y.S.2d 139, 142 (App. Div. 1986); *see also Karpinski v. Ingrasci*, 268 N.E.2d 751, 755 (N.Y. 1971) (inclusion of a liquidated damages term in a non-compete agreement does not automatically preclude an award of injunctive relief, and court may award equitable relief and "[a]ctual damages suffered during the period of the breach" as well);[4] *Wirth & Hamid Fair Booking v. Wirth*, 192 N.E. 297, 301 (N.Y. 1934) ("[A] court of equity may enjoin a continuing wrong for which damages would not furnish an adequate remedy, and even in the same action award damages for injury already caused to the plaintiff.  In such cases an injunction and an award of damages are not inconsistent.

_____

[4] *Karpinski* illustrates that, although this principle arises most often in cases involving buyers and sellers of real property, it is not confined to that context.  *Karpinski* is also particularly relevant here, as a non-compete agreement is analogous to a forum selection clause in the sense that usually any breach will cause immediate harm that cannot be fully remedied by an injunction or other form of purely prospective relief (like the venue transfer in this case).

Together they furnish a complete remedy for injuries threatened and suffered.").

Versatile's position — that the transfer of this case to this Court fully extinguished any right of SAS to collect damages for the breach — is clearly inconsistent with these principles, as the transfer alone does not fully compensate SAS for the losses it incurred from having to defend this action originally in Wisconsin, losses it would not have suffered had Versatile fully performed the contract.  Had this action originally been filed in this Court, the Parties would not have litigated the preliminary injunction issues twice, as happened here (*see* Dkt. Nos. 4-7, 18-21 (relating to Versatile's original motion for a preliminary injunction filed in Wisconsin)), SAS presumably would not have hired Wisconsin counsel at all, and, of course, the Parties would also have avoided litigation over the venue transfer.  The costs SAS incurred in pursuing this litigation are costs that "naturally flow[ed]" from Versatile's breach, *Freidus*, 510 N.Y.S.2d at 142, and the eventual transfer of this case to this Court cannot compensate SAS for those costs.[5] In analogous situations, New York courts ordering specific performance have also allowed a plaintiff to recover such monetary damages or their equivalent when the defendant's breach caused the plaintiff losses that would not be cured by the belated performance ordered by the court.  *See, e.g.*, *Coizza v. 164-50 Crossbay Realty Corp.*, 900 N.Y.S.2d 416, 421 (App. Div. 2010) (plaintiff purchaser awarded specific performance on a real estate contract could also recover consequential damages stemming from the seller's breach); *cf. Indosuez*, 758 N.Y.S.2d at 310-11 (plaintiff in action for breach of forum selection clause could obtain both permanent

---

[5] The Court takes Versatile to be arguing that no damages may *ever* be awarded when a court has ordered the breach remedied by a transfer.   It could well be that in some cases these expenses, or other legal costs, would have been incurred anyway even had the particular forum selection clause been performed.  However, that goes only to the amount of damages recoverable by the non-breaching party, not to whether a damages award is legally available.

injunction enforcing the clause and damages for defendant's past breach).

Versatile responds by invoking the well established New York rule that a court will not award specific performance when there is an adequate remedy at law, such as an action for damages.  (Versatile Reply at 2 n.2.)  *See, e.g.*, *La Mirada Prods. Co. v. Wassall PLC*, 823 F. Supp. 138, 140-41 (S.D.N.Y. 1993); *Sokoloff v. Harriman Estates Dev. Corp.*, 754 N.E.2d 184, 188 (N.Y. 2001).  Versatile's argument, however, requires the reverse to be true — that *damages* should not be awarded when *specific performance* is available and ordered.  That is inconsistent with the cases cited above and does not logically follow from the rule Versatile invokes. Specific performance will not be ordered "where money damages would be adequate to protect the expectation interest of the injured party," but it *will* be ordered when such damages would not be an "adequate remedy" for the non-breaching party, as in cases in which damages will be difficult to prove with certainty, damages would not allow the procurement of substitute performance, or the contract involves unique goods or services.  *Sokoloff*, 754 N.E.2d at 188 (internal quotation marks omitted).  As the cases discussed above illustrate, this principle works both ways, and courts may award damages as well as specific performance when specific performance alone would not be an "adequate remedy" for the non-breaching party.  Therefore, SAS may recover damages for Versatile's breach of the forum selection clauses here despite the fact that the clause has now been "performed" as a result of the venue transfer.

### c.  SAS's Entitlement to Attorneys' Fees as Damages

SAS principally seeks damages for the attorneys' fees it expended defending this action in Wisconsin.  (SAS Mem. 11-12; Decl. of John T.A. Rosenthal in Opp'n to Pl.'s Cross-Mot. for Partial S.J. and in Further Supp. of Def. SAS's Mot. for Partial S.J. ("Rosenthal Decl.") (Dkt. No. 125) ¶¶ 2-7.)  Versatile contends that such an award would violate the "general rule in New

16

York" that prevailing parties may not recover attorneys' fees absent some provision in a contract between the parties, state statute, or court rule allowing fee recovery.  (Versatile Mem. 2.)  SAS responds that some courts in New York have allowed plaintiffs asserting claims for breach of forum selection clauses to recover attorneys' fees and other litigation expenses.  (Mem. of Law in Opp'n to Pl.'s Cross-Mot. for Partial S.J. and in Further Supp. of SAS's Mot. for Partial S.J. ("SAS Reply") (Dkt. No. 123) 6.)

New York follows the "American Rule" on the award of attorneys' fees, meaning that "attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule."  *A.G. Ship Maintenance Corp. v. Lezak*, 503 N.E.2d 681, 683 (N.Y. 1986).[6] New York courts have recognized a number of exceptions to this general rule; included among these are first, a plaintiff may recover attorneys' fees if the defendant, with "actual malice," "intentionally [seeks] to inflict economic injury on plaintiff[] by forcing [him] to engage legal counsel."  *Brook Shopping Ctrs., Inc. v. Bass*, 483 N.Y.S.2d 1021, 1022 (App. Div. 1985); *see also Anniszkiewicz v. Harrison*, 737 N.Y.S.2d 316, 316-17 (App. Div. 2002); *United Pickle Co. v. Omanoff*, 405 N.Y.S.2d 727, 728 (App. Div. 1978) (same).  Second, "where a breach of contract has caused a party to maintain or defend a suit against a third person, the courts have permitted the recovery against the contract breacher of counsel fees and other litigation expenses incurred in the prior suit involving the third party."  *Artvale, Inc. v. Rugby Fabrics Corp.*, 232 F. Supp. 814, 826 (S.D.N.Y. 1964) (citing *Shindler v. Lamb*, 211 N.Y.S.2d 762 (Sup. Ct. 1959)),

---

[6] This rule "is based upon the high priority accorded free access to the courts and a desire to avoid placing barriers in the way of those desiring judicial redress of wrongs."  *A.G. Ship Maintenance*, 503 N.E.2d at 683.

*aff'd*, 363 F.2d 1002 (2d Cir. 1966); *see also Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, No. 07-CV-6915, 2010 WL 3199861, at *13 (S.D.N.Y. Aug. 11, 2010) (describing the "*Shindler* exception").  Third, in the insurance context, while an insured party may not recover legal expenses incurred in bringing an action against its insurer to force the insurer to defend a claim against it, it may recover the fees it incurs when the insurer seeks affirmatively to disclaim coverage, as through a declaratory judgment action.  *See U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 822 N.E.2d 777, 779-80 (N.Y. 2004); *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 389 N.E.2d 1080, 1085 (N.Y. 1979).

Finally, by court rule, New York courts may make awards of "actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct" in civil litigation. N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1(a).  Conduct is "frivolous" under this rule if it "is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law," is undertaken primarily to delay litigation or to harass, or involves "material factual statements that are false."  *Id.* §§ 130-1.1(c)(1)–(3).  The rule thus mirrors Federal Rule of Civil Procedure 11.  *See Jewelers Vigilance Comm., Inc. v. Vitale Inc.*, No. 90-CV-1476, 1997 WL 582823, at *5 n.7 (S.D.N.Y. Sept. 19, 1997).  The New York Court of Appeals has stressed, however, that a fee award for frivolous litigation must be imposed pursuant to a statute or court rule, and that, absent such a provision, there would be no general exception to the American Rule in cases of frivolous litigation.  *See A.G. Ship Maintenance*, 503 N.E.2d at 683-84; *see also C.I.T. Leasing Corp. v. Pitney Bowes Credit Corp.*, 633 N.Y.S.2d 487, 487-88 (App. Div. 1995).

Putting these court rules aside for the moment, no statute authorizes recovery of attorneys' fees in this case.  The Parties' contracts also do not provide for fee awards.  Neither

the Distribution Agreement nor the Patent Assignment Agreement contains any provisions expressly referring to attorneys' fees, with one exception not relevant here.[7]  (The exception does indicate, however, that the Parties knew how to provide specifically for cost-shifting in their written agreements.)  Although the incurring of attorneys' fees may be a foreseeable result of the breach of a forum selection clause, the New York rule is that any contractual abrogation of the American Rule must be by *express* contractual provision.  *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) ("[C]ourts applying New York law should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the contract." (internal quotation marks omitted)).  Finally, none of the judicially recognized exceptions set forth above directly applies here.  SAS does contend that Versatile's filing in Wisconsin was done in bad faith.  (SAS Reply 15.)  But SAS does not argue, and no facts suggest, that Versatile took this action *with the intent* to inflict economic injury on SAS by forcing it to defend in Wisconsin.  *See Brook Shopping Ctrs.*, 483 N.Y.S.2d at 1022 (affirming dismissal of claim for attorneys' fees where allegations fell "far short" of establishing that defendants "intentionally [sought] to inflict economic injury on plaintiffs by forcing them to engage legal counsel").

SAS points to two cases in which New York courts, apparently in spite of the general rule, ordered the payment of attorneys' fees as damages in breach of forum selection clause

---

[7] Specifically, the Distribution Agreement requires Versatile to cover SAS's costs in cases of patent infringement.  (Distribution Agreement ¶ 6.2.)

actions: *Allendale* and *Indosuez*.[8]  In *Allendale*, the defendant, the plaintiff's reinsurer, sought to rescind the parties' reinsurance agreement following a triggering event due to the plaintiff's alleged failure to disclose certain material facts.  992 F. Supp. at 281.  The defendant then filed a declaratory judgment action in the United Kingdom seeking rescission of the agreement; the English courts denied this relief, pointing to the agreement's forum selection clause, which required the defendant to submit to jurisdiction in the United States.  *Id.*  The English courts awarded plaintiff part of the litigation expenses it had incurred in defending the U.K. action.  *Id.* at 281-82.  Plaintiff then sued in this District seeking payments owed under the reinsurance agreement, as well as its remaining litigation costs in the English action as damages for the defendant's breach of the forum selection clause.  Concluding that the defendant had breached the forum selection clause by filing the U.K. action and that damages were available, the court awarded plaintiff the remainder of its U.K. litigation costs as damages.  *Id.* at 285-86.[9]  The court

---

[8] As Versatile points out, the other cases cited by SAS (*see* SAS Reply 7) do not involve the application of New York law.

[9] *Allendale* cited only two cases to support this conclusion.  The first, *Fischer v. Bright Bay Lincoln Mercury, Inc.*, 651 N.Y.S.2d 625 (App. Div. 1996), only described the general proposition that awards of contract damages should make the injured party whole.  *See Allendale*, 992 F. Supp. at 286 (citing *Fischer*, 651 N.Y.S.2d at 626).  The second case, *Laboratory Corp. of America, Inc. v. Upstate Testing Laboratory*, 967 F. Supp. 295 (N.D. Ill. 1997), did state that a party may seek damages for breach of a forum selection clause, but the court there decided this applying *Illinois* law, 967 F. Supp. at 299 n.6, and itself offered little analysis beyond citations to two Seventh Circuit cases, *id.* at 299.  In turn, only one of these cases states, in dicta, that damages are available.  *See Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 604 (7th Cir. 1994) (noting, where defendant corporation sought dismissal pursuant to a forum selection clause, that "[i]nstead of seeking damages for breach of contract, [defendant] is content with specific performance").  The cited passage of the other case only holds that it would violate "the duty of good faith" for a defendant sued in their chosen forum pursuant to a forum selection clause to seek to transfer the case out of the chosen forum for convenience reasons.  *Donovan*, 916 F.2d at 378.  None of the cases cited discusses the availability of attorneys' fees.

did not refer to the American Rule regarding attorneys' fees.

The *Indosuez* opinion does not detail the facts of the case, but it appears that the lower court had permanently enjoined the defendant from pursuing certain foreign litigation, concluding that the defendant was in breach of the relevant agreement's forum selection clause, and also awarded damages for the breach.  *Indosuez*, 758 N.Y.S.2d at 309.  The First Department affirmed, stating in relevant part that "[c]ontrary to defendant's contention, damages may be obtained for breach of a forum selection clause (*see* [*Allendale*]; . . . ), and an award of such damages does not contravene the American Rule that deems attorneys' fees a mere incident of litigation."  *Id.* at 311.  The First Department cited no authority for the latter part of this statement relating to attorneys' fees.

The Court gives "proper regard" to these cases.  *Runner*, 568 F.3d at 386.  However, the limited analysis in the opinions means they are without a great deal of value as persuasive authority or as "'indicators' of how the [New York] Court of Appeals would decide" the question.  *Reddington*, 511 F.3d at 133 (quoting *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005)); *see also In re Health Mgmt. Sys., Inc. Sec. Litig.*, 82 F. Supp. 2d 227, 236 (S.D.N.Y. 2000) (declining to follow unreasoned New York state and federal district court cases applying New York law on the shifting of fees in indemnification cases in a manner contrary to the American Rule).   The Court concludes that "other persuasive data" in New York Court of Appeals opinions suggests that that court would disagree with the conclusions in these cases. *Nat'l Serv. Indus.*, 460 F.3d at 210 (quoting *Estate of Bosch*, 387 U.S. at 465)).

The so-called *Shindler* exception to the American Rule is instructive.  *Shindler* allows the recovery of fees incurred in prior litigation against *third parties* caused by a wrongful act, including a breach of contract, of the defendant.  *See, e.g.*, *Travelers*, 2010 WL 3199861 at *13.

21

This is a "narrow exception," and the Court of Appeals has been very clear that "[w]hatever the proper scope of [the *Shindler*] exception, it is unavailable where . . . the purported 'third-party' wrongdoer is, either legally or as a practical matter, the same as the claimant's opponent in the main action."  *Hunt v. Sharp*, 649 N.E.2d 1201, 1202 (N.Y. 1995).  Versatile's breach here caused SAS to incur litigation costs not against a third party but against Versatile itself; *Hunt* forecloses the possibility of fee recovery in such a circumstance.

 *Hunt* also demonstrates that, as a more general matter, the New York Court of Appeals has not expanded the narrow American Rule exceptions to recognize the *general* rule that SAS's position would require this Court to adopt: that a party may recover attorneys' fees from an opposing party whenever the fees can be characterized as "damages" resulting from the opposing party's wrong, rather than as collateral consequences of litigation.  Even when an opposing party's conduct directly causes attorneys' fees to be incurred, fee recovery is unavailable unless a *specific* exception applies.  For instance, *Hunt* holds that attorneys' fees are only recoverable in litigation *against a third party* from a defendant whose tort or breach of contract causes that litigation, *see id.*, even though either a tort or breach of contract makes litigation against the tortfeasor or breaching party itself eminently foreseeable.  As another example, while an insured may recover litigation costs incurred *defending* a suit against a third party after the insurer declines to defend the claim, the insured may not recover costs incurred in suing the insurer to force the insurer to provide coverage, *see Doyle v. Allstate Ins. Co.*, 136 N.E.2d 484, 487 (N.Y. 1956), even though such costs are again a foreseeable result of an insurer's breach of its duty to defend.  Along the same lines, though a party bringing a common law indemnification claim may recover attorneys' fees "incurred in connection with defending the suit brought by the injured party," it may *not* recover the legal expenses incurred by pursuing the indemnification

claim itself. *See Chapel v. Mitchell*, 642 N.E.2d 1082, 1083-84 (N.Y. 1994).  In sum, there appears to be no support in the decisions of the New York Court of Appeals for the proposition that the American Rule gives way in situations like the one in this case, in which attorneys' fees are the measure of a party's foreseeable contract damages.

The Second Circuit has held that New York law allows parties in certain circumstances to recover consequential damages, including litigation costs, resulting from a breach of a covenant not to sue — an arguably analogous context. *See Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002, 1007-08 (2d Cir. 1966).  "A defendant normally may not recover damages — i.e., litigation expenses — for breach of a covenant not to sue unless the parties specifically intended such recovery." *Kamfar v. New World Rest. Group, Inc.*, 347 F. Supp. 2d 38, 51 (S.D.N.Y. 2004).  That intent will normally be made explicit in the parties' agreements. *See Artvale*, 363 F.2d at 1008 ("Certainly it is not beyond the powers of a lawyer to draw a covenant not to sue in such terms as to make clear that any breach will entail liability for damages, including the most certain of all — defendant's litigation expense.").  The "primary function" of such covenants "is to serve as a shield rather than as a sword." *Id.*  Therefore, "[i]n the absence of contrary evidence, sufficient effect is given the usual covenant not to sue if, in addition to its service as a defense, it is read as imposing liability only for suits brought in obvious breach or otherwise in bad faith." *Id.*

*Artvale* and its progeny are generally taken to be the Second Circuit's view on New York law, *see, e.g.*, *Lubrizol Corp. v. Exxon Corp.*, 957 F.2d 1302, 1306 n.5 (5th Cir. 1992); *Kamfar*, 347 F. Supp. 2d at 51 n.64; *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 586 F. Supp. 1286, 1288 (S.D.N.Y. 1984), but *Artvale* appears never to have been endorsed by the New York state courts. Nevertheless, even if *Artvale* were extended to the context of forum selection clauses, the Court

concludes that it does not allow for a fee award here.

The *Artvale* rule — that "absen[t] . . . contrary evidence," no litigation expenses may be recovered for breaches of covenants not to sue unless the suit was "brought in obvious breach or otherwise in bad faith" — is not satisfied if the suit "is ultimately held to be in breach of a covenant not to sue, but . . . was based on a reasonable and good faith argument either that the covenant did not bar the suit or that the covenant was obtained by unfair means." *Bellefonte*, 586 F. Supp. at 1288. A party with a reasonable argument for why the covenant does not cover the suit, or why the covenant should not be enforced, has not committed an "obvious" breach, and the breach is not "otherwise in bad faith" if such an argument is made in *good* faith. Here, Versatile raised at least one argument to the Eastern District of Wisconsin that qualifies — that under applicable Second Circuit precedent, Versatile's statutory claims (including those for trademark and copyright infringement) were not covered by the forum selection clause because they did not "arise from" the Parties' agreements, nor were they covered by the clause's reference to "any business dispute between the parties." (Pl.'s Opp'n to SAS's and Jordan Drew's Mot. to Dismiss (Dkt. No. 23) 13-16.) This was, without doubt, a weak argument, and Versatile's reading of the forum selection clause was rejected by the Wisconsin court, but it was not "patently and indisputably incorrect," *Bellefonte*, 586 F. Supp. at 1289 — or, to use the words of the New York court rules, it was not "completely without merit in law and [unable to] be supported by a reasonable argument for an extension, modification or reversal of existing law." N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1(c)(1). Even if the remaining arguments Versatile made in support of its Wisconsin choice were patently meritless, Versatile's one non-frivolous argument is enough. *See Bellefonte*, 586 F. Supp. at 1289 ("[A]s plaintiffs had at least one reasonable good faith argument . . . those suits were not in 'obvious breach' of the covenants

24

not to sue.").

SAS responds that the argument was made in bad faith because there is some indication Versatile suspected at the time it filed its suit that the forum selection clause did cover it.[10]  (SAS Reply 7; Letter from John T. A. Rosenthal to the Ct. (Nov. 16, 2010) 2-3.)  Even viewing this evidence in the light most favorable to SAS, however, it does not establish by itself that Versatile brought this action in Wisconsin for some wrongful purpose, nor is there anything else in the record suggesting Versatile sought to litigate this case in Wisconsin in "bad faith."  *See United States v. Schneider*, 289 F. Supp. 2d 328, 332 (E.D.N.Y. 2003) ("Bad faith 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it contemplates a state of mind affirmatively operating with furtive design or ill will.'" (alteration omitted) (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999))); *cf.* N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1(c)(2) ("frivolous" conduct includes conduct "undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another").[11]

Of course, in reality the fees SAS incurred in defending itself in Wisconsin were not

---

[10] Versatile seems to have known, or perhaps feared, that the forum selection clause applied to this action when it filed it, as evidenced by the fact that when SAS's counsel sought Versatile's consent for an extension of time to oppose Versatile's motion for a preliminary injunction in Wisconsin, Versatile apparently refused to consent unless SAS agreed not to enforce the clause by moving to transfer this action.  (*See* Rosenthal Decl. Exh. E.)  Versatile's counsel at oral argument disputed SAS's "characterization" of this conversation.

[11] In its reply memorandum, SAS states emphatically that it "is *not* asking the Court to sanction Versatile for frivolous conduct."  (SAS Reply 8 (emphasis in original).)  Some New York cases have held that, in context, a party's breach of a forum selection clause was not "frivolous" conduct under the New York court rules, precluding an award of attorneys' fees. *See, e.g.*, *Sydney Attractions Grp. Pty Ltd. v. Schulman*, 902 N.Y.S.2d 82, 83 (App. Div. 2010); *Horton v. Concerns of Police Survivors, Inc.*, 878 N.Y.S.2d 793, 794 (App. Div. 2009).  These cases do not indicate whether any party sought attorneys' fees as "damages" for the breach.

"incident" to the substantive litigation in which SAS was involved; they were a loss — the primary loss — occasioned directly by Versatile's breach of the clause. *Cf. Cefali v. Buffalo Brass Co.*, 748 F. Supp. 1011, 1026 (W.D.N.Y. 1990) (noting in the context of a breach of a covenant not to sue that "this is not the typical case where the prevailing party seeks attorneys['] fees. In this case, the fees can be seen as a direct measure of damages for the alleged breach of contract."). The Court also recognizes that the primary source of damages that will be occasioned by breaches of forum selection clauses are attorneys' fees, and that excluding these damages might well frustrate the purpose of contract damages: compensation of the non-breaching for the lost performance and any additional losses. *See Appliance Giant*, 779 N.Y.S.2d at 613. These are arguments, however, that should be directed to the New York Court of Appeals or legislature, and otherwise should be considered by parties to future contracts containing such clauses. "Imposing a cost on someone seeking to enforce his rights — whether those rights arise from contract, statute, or common law — may seem inequitable. But shifting fees in such situations would create an exception that would swallow the 'American Rule' . . . ." *Health Mgmt. Sys.*, 82 F. Supp. 2d at 236.

Because SAS may not recover the attorneys' fees it incurred in litigating this case in Wisconsin, SAS's motion for summary judgment on the counterclaim is DENIED with respect to those fees, and Versatile's motion for summary judgment is GRANTED to the extent SAS seeks those fees.

### 2. Amount of Damages

The American Rule only precludes the recovery of attorneys' fees, not other costs. The Court has determined that SAS is entitled to recover any damages it incurred that resulted from Versatile's breach of the forum selection clause except its attorneys' fees. SAS's submissions do

not indicate whether SAS claims damages from any other loss it suffered.  Moreover, New York

law requires the plaintiff in a breach of contract action to mitigate damages it incurs; failure to

do so will result in the defendant not being charged with them.  This duty to mitigate only

extends to those damages "that the plaintiff could have avoided with reasonable effort and

without undue risk, burden, or expense."  *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 696 F.

Supp. 2d 428, 440-41 (S.D.N.Y. 2010).  The Parties have not yet addressed whether SAS was

obligated to mitigate damages here or, if so, which damages were subject to that duty.  SAS is

therefore directed to apprise the Court of any further damages to which it claims to be entitled,

and the Parties are directed to address the question whether SAS was subject to a duty to

mitigate.  Submissions on these points are due thirty days from the date of this Opinion.

### III.  Conclusion

For the reasons stated herein, SAS's motion for partial summary judgment is GRANTED

except to the extent SAS claims to be entitled to attorneys' fees; with respect to SAS's claim for

attorneys' fees as contract damages, SAS's motion is DENIED.  Versatile's motion for partial

summary judgment is DENIED except to the extent SAS seeks attorneys' fees.


SO ORDERED.

Dated:        White Plains, New York
              June 27, 2011

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

27

Service List:
Michael J. Gratz, Esq.
Michael T. Griggs, Esq.
Adam L. Brookman, Esq.
Boyle Fredrickson, S.C.
840 N. Plankinton Ave.
Milwaukee, WI 53203
(414) 225-9755
Fax: (414) 225-9753
Email: mjg@boylefred.com
Email: mtg@boylefred.com
Email: abrookman@boylefred.com

Anthony J. Siano, Esq.
333 Westchester Ave.
White Plains, NY 10604
(914) 997-0100
Fax: (914) 997-4179
Email: TonySiano@aol.com

Kevin S. Kreger, Esq.
Byelas & Neigher
1804 Post Road East
Westport, CT 06880
(414) 225-9755
Fax: (414) 225-9753
Email: ksk@boylefred.com
*Counsel for Plaintiff-Third-Party-Defendant Versatile Housewares & Gardening Systems, Inc.*

Kevin J. Harrington, Esq.
John T. A. Rosenthal
Harrington Ocko & Monk, LLP
81 Main St., Suite 215
White Plains , NY 10601
(914) 686-4800
Fax: (914) 686-4824
Email: kharrington@homlegal.com
Email: jrosenthal@homlegal.com

Gregory B. Conway, Esq.
Thomas W. Schmidt, Esq.
Liebmann Conway Olejniczak & Jerry S.C.
231 S. Adams St.
P.O. Box 23200
Green Bay, WI 54305
(920) 437-0476

Fax: (920) 437-2868
*Counsel for Defendant-Third-Party-Plaintiffs SAS Group, Inc., and Jordan Drew Corporation*

Charles Allen Crum, Esq.
Herzfeld & Rubin, P.C.
125 Broad St.
New York, NY 10004
(212) 471-8531
Fax: (212) 344-3333
Email: ccrum@herzfeld-rubin.com

Andrew Wagener, Esq.
Bollenbeck Wagener Spaued & Fyfe, S.C.
W6260 Communication Ct.
Appleton, WI 54914
(920) 735-1711
Fax: (920) 735-1710
Email: law@bwsf.biz
*Counsel for Defendants Thill Logistics, Inc., and NAT, LLC*