UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

VERSATILE HOUSEWARES &
GARDENING SYSTEMS, INC.,

    Plaintiff,

v.                Civil Action No. 09-cv-10182 (SHS-AJP)

THILL LOGISTICS, INC.;
SAS GROUP, INC.;
NAT, LLC; and
JORDAN DREW CORPORATION,

    Defendants.
---------------------------------------------------------X

## VERSATILE'S MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF MARKETING EXPERT LARRY CHIAGOURIS

            Adam L. Brookman (AB-4935)
            Michael T. Griggs
            Kyle M. Costello
            BOYLE FREDRICKSON S.C.
            840 N. Plankinton Ave.
            Milwaukee, WI  53203
            Telephone:  414-225-9755
            Facsimile:  414-225-9753

            Anthony J. Siano
            Offices of Anthony J. Siano, Esq.
            333 Westchester Avenue
            White Plains, New York 10607
            Telephone: 914-997-0100
            Facsimile: 914-997-4179

            ***Attorneys for Plaintiff Versatile Housewares &***
            ***Gardening Systems, Inc.***

Defendants have placed the expert report of Dr. Larry Chiagouris on their exhibit list. However, they have not listed him among their witnesses. This is presumably because they intend to call him as a rebuttal witness.

According to Dr. Chiagouris' report, he has submitted an opinion with respect to three things:

1. Whether the Plaintiff, Versatile, has undertaken activities prior to March 2007 to properly nationally brand its gardening auger product(s) using the names "Awesome Auger", "Ground Aug", and "Weed Aug", such that consumers would be likely to associate the name(s) and the product(s) with Versatile.

2. Whether Defendant SAS has undertaken sufficient activities after March 2007 to nationally brand its garden auger products using the name "Awesome Auger," such that consumers would be likely to associate that name and the product(s) with SAS.

3. Whether the commercials and retail packaging for SAS's gardening tool product are likely to mislead consumers as to the total length of the gardening tool product sold by SAS in retail stores in the United States.

Assuming Defendants do intend to call Dr. Chiagouris, Plaintiff moves to have portions of his testimony excluded on the following grounds:

- Dr. Chiagouris's failure to provide opinions based on the application of reliable principles and methods; and

- With respect to any testimony by Dr. Chiagouris on SAS's case in chief, the failure to identify Dr. Chiagouris as a witness in the Joint Pretrial Order.

Plaintiff does not object to the testimony of Dr. Chiagouris with respect to Versatile's marketing activities prior to March 2007 with respect to the Ground Aug and Weed Aug marks.

I.   **Dr. Chiagouris's Testimony as to SAS's Commercials and Retail Packaging Must be Excluded For His Failure to Provide Opinions Based on the Application of Reliable Principles and Methods**

Federal Rule of Evidence 702 permits the testimony of expert witnesses provided that their testimony is based on sufficient facts or data and the testimony is the product of reliable principles and methods that have been applied reliably to the facts of the case.  The Supreme Court, *Daubert,* set forth five factors to guide a court in assessing the reliability of scientific expert testimony: (1) "whether a theory or technique ... can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the known or potential rate of error;" (4) "the existence and maintenance of standards controlling the technique's operation;" and (5) whether the technique or method has met with general acceptance.  *Daubert v. Merrell Dow Pharm.,* 509 U.S. 579, 593–94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  Thus, in evaluating proposed expert testimony, the court plays a "gatekeeping" role, in which it must evaluate, based on all of the circumstances, the relevance and reliability of all expert testimony and whether the testimony offered is "scientific" or not.  *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Dr. Chiagouris purports to testify about the effect on consumers of SAS TV commercials that Versatile asserts are false and misleading so as to constitute false advertising.  Chiagouris Expert Report, at 14-16, attached as Ex. A to the accompanying Declaration of Michael Griggs.  However, Chiagouris's testimony will do nothing more than substitute his own opinion for that of the fact finder in a manner that is more prejudicial than probative.

In reaching his ultimate conclusion about the effect of the commercials in issue, Chiagouris did nothing more than watch the two commercials.  He did not perform a survey.  He conducted no tests.  He did not even talk to a single actual or potential customer.  Instead,

2

Chiagouris says things like, "It is not clear why anyone viewing the commercial would draw a conclusion as to the length of the product. Although the product is portrayed in use by.Billy Mays, there is no indication as to how tall Billy Mays is and there are no other frames of reference in terms of length provided in the commercial that would allow a viewer to draw a conclusion as to the length of the Awesome Auger." And, "[G]iven the characteristics of the Awesome Auger product, it is reasonable to expect that consumers would not rely on video images of Billy Mays using the product in a television commercial to draw a conclusion about the dimensions of the product (specifically the product's length) sold in retail locations. Understanding the type of product represented by the auger product provides insight into relevant consumer behavior. Specifically, it provides insight as to what consumers are more likely to rely upon to ascertain its dimensions."

This is not expert testimony. This is merely a conclusion based upon a purely subjective analysis by someone paid to reach that very conclusion. It is lay analysis overlaid with the prejudicial sheen of an expert. And it will do nothing more than allow Chiagouris to usurp the ultimate role of the fact finder. *See, e.g., In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004) (rejecting argument "that courts should permit 'experts' to tender purely subjective views in the guise of expert opinions" because "[t]his would border on the absurd"); *Daubert*, 509 U.S. at 590 ("the word 'knowledge'[in Rule 702(a), Fed. R. Ev.] connotes more than subjective belief or unsupported speculation").

This same purely subjective analysis advocating a particular agenda continues with respect to the appearance of SAS's retail packaging – although Chiagouris confuses the TV purchases with retail sales in an effort to claim that the products are "impulse" buys, "Products that are not impulse items will generally result in the consumers spending more time· *at the*

3

*retail location* where the product is available in order to examine the product and the package in which the product is sold.  The Awesome Auger is not an impulse item. *These products are generally sold at price points above $20 **when shipping costs are included**.*"[1]  Chiagouris Expert Report at 16 (emphasis added).  Chiagouris also draws conclusions from a perceived *lack of evidence* with respect to things that are his or SAS's burden to prove, "There is no evidence that people who garden intentionally use a tool that does not provide them with expected results and so, they can be expected to search for tools that minimize their risk in the purchase of their garden tools."  This same lack of evidence also manifests itself in Chiagouris's characterizations of the location of the products in stores where retail sales supposedly occurred, "Even the location of these products in retail stores indicates that these products are not impulse items.  Impulse items in retail stores are likely to be located physically very near the checkout counter.  For stores that sell garden tools such as Walmart, Home Depot, and Lowes, garden tools *such as the auger are typicall*y not found within a few feet of the cash register."  Chiagouris Expert Report at 17 (emphasis added).  Chiagouris draws this conclusion, but makes clear by his use of the phrases "such as the auger" and "are typically" that he never visited a store where the products were on sale.[2]  In other words, he has no idea where the product was actually sold in these stores – assuming it was even sold in any of them at all, something that does not appear to be the case based on the evidence produced by Defendants.

    Finally, Chiagouris opines on the package itself by, among other things, describing what is self evident to any fact finder and can be derived from virtually any other witness,

---

[1] Obviously shipping costs are not included in retail sales.  But it is also worth noting that Made for TV sales are, by their very nature, impulse buys.

[2] Nor does Chiagouris state or otherwise indicate that he visited any stores – something he was required to disclose if it occurred and relied upon in forming his opinion.  Rule 26(a)(2), Fed. R. Civ. P.

4

"[C]onsumers can be expected to examine these products in the store in order to determine if they should purchase the products. As a part of their examination, they can be expected to examine the package."  After indicating he visited SAS's counsel (not a store) to look at a package, he states, "My review of packages sold by SAS in connection with that visit to the law offices of Harrington, Ocko & Monk confirm that the dimensions of the product, to include its length, are clearly marked on the package. . . . The package itself is approximately 12.5" tall, 4" wide, and 4" in depth, which would indicate to a consumer that none of the three (3) pieces included in the box could be longer than 12" . . ."

Chiagouris wraps up his analysis of the packaging by putting his expert sheen on his conclusion without having performed any actual testing, research or analysis, "To summarize this section, it should be noted that scholarly research has been reported which indicates that many consumers are skeptical of advertising and not likely to accept as truthful the claims made by an advertiser in a commercial.[3]  Given consumer skepticism and the need to reduce their levels of risk in making a purchase, it is reasonable to expect consumers will examine the package at the point of sale.  In so doing, they will develop expectations about the product dimensions that are influenced by dimensions noted on the package. They are not likely to form opinions about the dimensions of the product based on viewing the SAS commercials."

As can be clearly seen, not only does Chiagouris fail to employ any reliable principles and methods as required by Rule 702, he employs no principals or methods at all.  He merely states a subjective conclusion consistent with the view of those who paid his bill.  He should be precluded from testifying with respect to SAS's false advertising.

---

[3] Chiagouris cites to Obermiller, Carl, Eric Spangenberg, and Douglas L. MacLachlan (2005), "Ad Skepticism: The Consequences of Disbelief," *Journal of Advertising,* 34 (3), 7-17 for this point.

## II. Dr. Chiagouris Should be Precluded from Testifying as to SAS's Branding Using the Name "Awesome Auger" for Failing to Identify Him on Its Witness List

In his report, Chiagouris purports to opine on, "Whether Defendant SAS has undertaken sufficient activities after March 2007 to nationally brand its garden auger products using the name "Awesome Auger," such that consumers would be likely to associate that name and the product(s) with SAS."  Given that the Court has granted the Defendant's Motion for Summary judgment and dismissed Versatile's claim for trademark infringement of Awesome Auger, such testimony is only relevant to bolster Jordan Drew's claim of trademark infringement with respect to its asserted trademark registration.  *See, e.g., Windsor, Inc. v. Intravco Travel Centers, Inc.*, 799 F. Supp. 1513, 1522 (S.D.N.Y. 1992)("In evaluating the strength of the mark, the court must consider not only its conceptual strength as described above, but also its commercial strength—i.e., its significance in the marketplace as identifying the origin of goods.)"  The Joint Pretrial Order requires, "A statement by each party as to the witnesses whose testimony is to be offered in its case in chief."  SAS and Jordan Drew have not identified Dr. Chiagouris as a witness for their case in chief.  Perhaps they intended to forego such testimony given its minimal probative value,[4] but if, instead, they intend to call him on this subject, they should be precluded from doing so as to avoid trial by ambush.

## III. CONCLUSION

It is respectfully submitted in view of Dr. Chiagouris failure to employ reliable principles and methods, or indeed, any principles and methods at all, his testimony as to SAS's false advertising should be precluded.  Further, to the extent Dr. Chiagouris is offered to provide

---

[4] As with his proffered testimony related to false advertising, Chiagouris did not conduct a survey or even talk to a single actual or potential consumer.

testimony on SAS's Branding Using the Name "Awesome Auger" such testimony should be precluded because he was not identified on Defendants' witness list.

             Respectfully submitted:

Dated: February 1, 2016       <u>s/Michael T. Griggs</u>
                  Adam L. Brookman (AB-4935)
                  Michael T. Griggs
                  Kyle M. Costello
                  BOYLE FREDRICKSON S.C.
                  840 N. Plankinton Ave.
                  Milwaukee, WI  53203
                  Telephone:  414-225-9755
                  Facsimile:   414-225-9753

                  Anthony J. Siano
                  Offices of Anthony J. Siano, Esq.
                  333 Westchester Avenue
                  White Plains, New York 10607
                  Telephone: 914-997-0100
                  Facsimile: 914-997-4179

                  ***Attorneys for Plaintiff Versatile Housewares &***
                  ***Gardening Systems, Inc.***

{00930518.DOCX / }

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 1, 2016 I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of the filing to all counsel of record.

              s/Michael T. Griggs
              Michael T. Griggs
              Counsel for Plaintiff