UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VERSATILE HOUSEWARES & GARDENING
SYSTEMS, INC.,

      Plaintiff,

  v.

THILL LOGISTICS, INC.;
SAS GROUP, INC.;
NAT, LLC; and
JORDAN DREW CORPORATION,

      Defendants.
------------------------------------------------------------------X
SAS GROUP, INC. and JORDAN DREW
CORPORATION,

      Counterclaim and Third-Party Plaintiffs,

v.

VERSATILE HOUSEWARES & GARDENING
SYSTEMS, INC. and THOMAS MOTOSKO,

      Counterclaim and Third-Party Defendants.
------------------------------------------------------------------X

Civil Action No.
09-cv-10182 (SHS) (AJP)

---

**MEMORANDUM OF LAW IN OPPOSITION TO VERSATILE'S MOTION *IN LIMINE* TO PRECLUDE THE EVIDENCE OF DEFENDANTS' EXPERT, LARRY CHIAGOURIS**

---

HARRINGTON, OCKO & MONK, LLP
*Attorneys for Defendants*
*SAS GROUP, INC., JORDAN DREW CORPORATION,*
*SCOTT SOBO and GENE SOBO*
81 Main Street, Suite 215
White Plains, NY 10601
(914) 686-4800

Plaintiff has moved to preclude the testimony of Defendants' marketing expert, Larry Chiagouris, based on the argument that he failed to provide opinions based on the application of reliable principles and methods with respect to packaging used by SAS for its retail auger product, and the commercials used by SAS to sell its infomercial based product.

A simple review of Mr. Chiagouris' expert report indicates that the arguments made by Plaintiff are simply not grounded in the reality of the report, nor do they apply the appropriate standard regarding the admissibility of expert testimony, when the testimony of the particular expert is based on his experience in the profession, rather than on tests or consumer surveys. As such, Plaintiff's motion to preclude Mr. Chiagouris from testifying about the retail packaging for the product, SAS's commercials for the product, and the impact of that packaging and those commercials on the consumer must be denied in its entirety.

## I.  LEGAL STANDARD-EXPERT TESTIMONY

F.R.E. 702 permits witnesses qualified as experts by knowledge, skill, experience, training or education to testify at trial in the form of an opinion about scientific, technical or other specialized knowledge if that knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. F.R.E. 702; *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*, 691 F.Supp.2d 448, 457 (S.D.N.Y. 2010). For expert testimony to be admissible under Rule 702, three requirements must be met. First, the witness must be qualified as an expert by knowledge, skill, experience, training or education to opine on the issue. *Id.* This requirement is construed liberally. *Id.* Second, the expert's knowledge must be of the type that will assist the trier of fact. Id. Third, the expert's testimony must be based upon a reliable foundation. Id.

In making a determination as to whether an expert's testimony is sufficiently reliable, the court can consider the following: (1) that the testimony is grounded on sufficient facts and data,

(2) the testimony is the product of reliable methods and principles, and (3) the witness has applied the principles and methods reliably to the facts of the case. *Id.*

In making determinations as to whether an expert can testify, the court is not to weigh on the issue of the expert's credibility. *Id.* That determination is left to the trier of fact, after the opposing side has had an opportunity to cross-examine the expert witness, and present contrary evidence. *Id.*

In circumstances in which the expert opinion is based upon years of accumulated expertise and learning, the reliability of that opinion should be assessed without reference to the *Daubert* factors. *State Farm Fire and casualty Co. v. Electrolux North America*, 2011 WL 6753140, at *7 (W.D. Wash. Dec. 23, 2011); *EMIG v. Electrolux Home Products, Inc.*, 2008 WL 4200988, at *7 (S.D.N.Y. Sept. 11, 2008). A qualified expert may draw conclusions from a set of observations, based upon that expert's extensive and specialized experience. *Id.* If the expert relied on his experience and background to arrive at the offered opinion, the expert need only show that his opinion is based upon sufficient facts or data, and provide an explanation as to how that experience leads to the conclusions reached, and why that experience is a sufficient basis for the opinions. *Id.* An expert's inspection of the product at issue is sufficient to form an expert opinion about the product and its uses, and possible impact on users. *Liriano v. Hobart Corp.*, 949 F.Supp. 171, 177 (S.D.N.Y. 1996); *EMIG*, 2008 WL 4200988, at *7-8. Lack of testing or data in support of an expert opinion goes to the weight and not the admissibility of the expert's testimony. *Id.* The expert need only consider enough factors to make the opinion reliable, but need not consider every possible factor, or perform every possible test of the opinion to be sufficiently reliable. *Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.*, 461 F.Supp.2d 271, 274

(D.N.J. 2006). Concerns regarding an expert's methods are better left for cross-examination, rather than to preclude that expert from testifying. *Id.*

## II. THE EXPERT OPINION OF DR. CHIAGOURIS AS TO EFFECTS OF SAS'S COMMERCIALS AND PACKAGING ON CONSUMER BEHAVIOR IN PURCHASING BASED UPON HIS BACKGROUND AND EXPERIENCE IS SUFFICIENTLY RELIABLE, AND SHOULD NOT BE EXCLUDED

Plaintiff has moved to preclude the opinion of Defendants' expert, Mr. Larry Chiagouris, and his testimony about whether or not the commercials and retail packaging used by SAS to promote its "Awesome Auger" product will impact consumers and their opinions, as to the total length of the gardening product sold in retail packaging in retail stores. As described by Defendants in their motion *in limine* and motion to strike Plaintiff's jury demand, Plaintiff's claim for false advertising is necessarily limited to whether or not the retail packaging for SAS's "Awesome Auger" product is intentionally false, and likely to mislead consumers as to the length of the product sold in the retail package; the allegations in Plaintiff's Third Amended Complaint all refer to the combined length of a 22" retail auger product sold by SAS (a 12" extender and 12" auger), and the only such product of SAS that is sold in a retail package. In contrast, the auger product sold by SAS through TV commercials, and which were thereafter purchased by telephone or by visiting the designated website, was an auger product with a total length of 28", when assembled, which includes an 18" extender. *See* Declaration of John T. Rosenthal, dated February 8, 2016 ("Rosenthal Dec."), ¶ 3-4, Exs. 1-2.

Plaintiff argues that the expert testimony of Mr. Chiagouris, as to whether the retail packaging and the commercials will impact the perceptions and purchasing habits of consumers, should be precluded, under the theory that the conclusions offered by Mr. Chiagouris are purely subjective, lack proper evidence to support the conclusions, and supposedly represent nothing more than a substitution of his opinion about the packaging and commercials for that of the trier

3

of fact. Plaintiff bases these arguments on the supposed notion that because Mr. Chiagouris did not conduct a survey of consumers, or visit a retail store where the product is sold, or that his observations about the content of the commercials and the dimensions of the retail packaging could supposedly be made by anyone, his expert opinions about the impact of the commercials and the retail packaging on consumers as to the overall length of the retail product, do not represent proper expert opinion.

Plaintiff's arguments are simply wrong and misguided, and they fail to cite or apply the appropriate standards and requirements of Rule 702 as to the expert testimony of Mr. Chiagouris.

It should be noted at the outset, that in its motion, Plaintiff does not challenge the qualifications of Mr. Chiagouris as an expert in the field of marketing and consumer behavior. Nor can it. The pedigree of Mr. Chiagouris is unassailable; he has advanced degrees in marketing and consumer behavior from top universities in the U.S., he has held top marketing positions at several major advertising agencies and other U.S. companies. Mr. Chiagouris has held top leadership positions in leading professional marketing associations, his academic career in marketing spans more than 20 years, and he has been qualified as a marketing expert by numerous other Federal Courts. Rosenthal Dec., ¶ 3, Ex. 1. Because Plaintiff clearly cannot attack the qualifications of Mr. Chiagouris as an expert in the field of marketing and consumer behavior, it attempts to attack his expert opinions regarding the packaging and commercials, and the impact of those marketing materials on consumers who may purchase SAS's retail auger product.

As an initial matter, contrary to the assertions contained in Plaintiff's motion, the opinions of Mr. Chiagouris regarding the impact of the commercials and retail packaging on consumers need not be based upon consumer surveys or tests, and even interviews with

customers. As described above, under Rule 702, there is no requirement that surveys or tests or consumer interviews be conducted by an expert, in order to admit expert testimony as to consumer behavior, when that testimony is based upon the extensive experience and background of the expert, himself, in the particular field. Therefore, the case law cited by Plaintiff for the notion that the Court must apply the *Daubert* factors in order to assess the reliability of the expert opinion of Mr. Chiagouris is simply false, and contradicts the case law in this Circuit.

Moreover, Plaintiff's completely mischaracterize the actual basis for Mr. Chiagouris conclusions that the commercials are not likely to impact a consumer's perception about the overall length of the retail product being marketed and sold in retail packaging, or as a result of the package itself, or the TV commercials. Rather than being based simply on the content of the "Awesome Auger" commercials or the retail packaging, as wrongly suggested by Plaintiff, in his report, Mr. Chiagouris goes into a lengthy and detailed description, based upon his extensive expertise in the field of marketing and consumer behavior, and the current literature in the field, about why the nature of a given product, and the circumstances of the purchase, significantly impact the kind of information a consumer is likely to want and use when making a given product purchase, and whether the presence of that information will sufficiently inform the consumer about the actual characteristics of the product they are buying. Rosenthal Dec., ¶ 3, Ex. 1.

As explained by Mr. Chiagouris in his report, and reflected in marketing literature on consumer behavior he cites to, consumers are likely to spend considerably more time researching and reviewing a product for purchase, which they perceive to be higher in risk, which higher perceived risk is often based upon product price. *Id.*, at p. 16. Higher perceived risk by the consumer is associated with the purchase of products that cost more, and are not deemed

"impulse items" for purchase; "impulse items" are products like gum or candy, with low price points, and are generally placed near the checkout counter in stores. *Id.*

As discussed by Mr. Chiagouris, based upon his expertise and experience in the field of marketing and consumer behavior, and the relevant literature in the field, the auger product at issue is a $20 product, and therefore, does not fall in to the category of "impulse item" for purchase. *Id.*, at p. 16. Because the auger cannot be deemed as an "impulse item", according to Mr. Chiagouris and his experience and expertise in the field of marketing, consumers will spend more time researching a given item, and examining the product prior to purchase, particularly in a retail setting, which is where a consumer would confront the retail auger sold by SAS in a retail package. *Id.*, at pp. 16-17.

In addition, based upon his marketing expertise and background, Mr. Chiagouris is able to opine about where gardening tools, like the retail auger, would generally be placed in a store for display, as opposed to "impulse items" like gum and candy. Because the retail auger is not an "impulse item", it would likely be placed further from the cash register or checkout counter, thus allowing the consumer more time for product examination, and inspection prior to purchase. *Id.* Given that consumers of "non-impulse" items, like the retail auger purchased in a retail setting, are more likely to spend time to review the disclosures on the retail package, look at the size of the box itself, and look inside the box, according to his expertise and experience in the fields of marketing and consumer behavior, Mr. Chiagouris can opine that a retail consumer will be able to see that the extender for the retail auger is stated on the box as being 12 inches in length, the auger is actually 12 inches in length, and the combined product length can be no longer than 24 inches in length, and the customer is not likely to believe the extender is longer before or after actual purchase of the product.

In addition, based upon his experience and expertise in the field of marketing and consumer behavior, Mr. Chiagouris can provide an opinion as to the importance that consumers place on claims and disclosures in TV commercials, when making a product purchase. As described in his report, based upon his expertise and the relevant literature in the field of marketing and consumer behavior, consumers are "skeptical of advertising" generally, and not likely to accept the claims made by advertisers in commercials about product features, at face value. *Id.*, at p. 18. Rather, as described by Mr. Chiagouris, and supported by the relevant literature in the field, the consumer is likely to investigate the product being advertised on TV further, in order to confirm the characteristics of the product before purchase. *Id.*, at p. 18.

Applying these fundamental principles of marketing and consumer behavior, based upon his experience and expertise in the field, and the relevant literature to which he cites, Mr. Chiagouris can and does review the content of the retail package and the "Awesome Auger" TV commercials, in order to provide an opinion as to whether such content (or absence of content) in the commercials and on the packaging would cause a consumer to rely solely on the commercials to form a belief about the actual length of the product being advertised and sold. His conclusion is that, based upon the norms of consumer behavior, consumers will generally not rely solely on images presented in TV commercials, in assessing the actual characteristics of the retail product; like overall length. This is particularly true when the TV ads do not state a particular length. *Id.*, at pp. 15-16. In addition, based upon his expertise in the field, Mr. Chiagouris can and does form an opinion as to whether the type of product, and the setting of the purchase for the product, will impact or influence consumer behavior in terms of what conclusions that consumer will draw from the content of a commercial about the product's actual features. *Id.* His conclusion is that they would not be heavily influenced. *Id.*

7

None of this analysis, and application of marketing and consumer behavior principles to the actual product and marketing materials at issue, is simply the subjective spin, or "sheen" of Mr. Chiagouris, without basis, as suggested by Plaintiff in its motion. Rather, the report of Mr. Chiagouris lays out in detail, certain relevant, fundamental principles of marketing and consumer behavior, based upon his own experience and expertise in the field, and supported by references to relevant literature in the field. As any other expert would, Mr. Chiagouris then applies the appropriate fundamental principles to the marketing materials and product at issue, in order to come to an opinion about the likely impact of the marketing materials on the consumer's beliefs and behavior about the actual product and its characteristics, prior to purchase. This represents nothing less than uncontroversial, basic expert opinion testimony. As such, Plaintiff's suggestion that it is subjective "spin", and "sheen" without foundation is simply false, and its motion to preclude the expert testimony of Mr. Chiagouris on the issue of the impact of the commercials and packaging on consumer perceptions of the product's characteristics prior to purchase, must be denied.

Plaintiff further objects to Mr. Chiagouris testifying as an expert in this matter based on the notion that his observations about the retail package, the dimensions of the product, and the impact of TV commercials on consumers are "self-evident to any factfinder and can be derived from virtually any other witness". Plaintiff, either intentionally or otherwise, misses the point as to the expert opinion Mr. Chiagouris is presenting, and is simply wrong as to these observations. While Mr. Chiagouris does examine the retail package and identify the length of the package, the disclosures on the package, and the contents of the package, those observations are not the sole basis for his opinion regarding the impact of the retail packaging on a consumer's belief about the length of the product contained in that packaging. Rather, Mr. Chiagouris offers expert

opinion based on his experience in the field about likely consumer behavior in making purchases of "non-impulse" items located in retail settings; like the auger. A consumer simply cannot opine on the possible, likely behavior of other consumers regarding what should or should not be deemed an "impulse" item, and what kind of conduct other consumers routinely undertake in examining products in a retail setting. Such opinions can only be offered by an expert, like Mr. Chiagouris, with years of experience in the fields of advertising, marketing and consumer behavior as to the general characteristics and behaviors presented by consumers, and their responses to products in a retail setting; not a lay witness or the jury.

Nor could the average consumer opine about whether or not other consumers might display skeptical behavior regarding pronouncements about products and their characteristics made in TV commercials. That too is the sole domain of an expert, like Mr. Chiagouris, with years of relevant experience in the fields of advertising, marketing and consumer behavior familiar, supported by relevant literature on those subjects as to the amount of skepticism consumers display when confronted with TV ads about a product.

## CONCLUSION

For the foregoing reasons, as well as in the Declaration of John T.A. Rosenthal, Defendants respectfully request that the Court deny Plaintiff's motion *in limine* to preclude the testimony of Defendants' expert, Larry Chiagouris.

Dated: White Plains, New York
       February 8, 2016

                              Respectfully submitted

                                  s/ John T.A. Rosenthal
                       By:_____
                            Kevin J. Harrington (KH-5027)
                            John T.A. Rosenthal (JR-4819)
                            HARRINGTON, OCKO& MONK, LLP

*Attorneys for Defendants/Counterclaim and Third-Party Plaintiffs*
*SAS GROUP, INC., JORDAN DREW CORPORATION and GENE SOBO*
81 Main Street – Suite 215
White Plains, New York 10601
Telephone: (914) 686-4800
Facsimile:   (914) 686-4824
kharrington@homlegal.com
jrosenthal@homlegal.com

TO:

Michael T. Griggs, Esq.
Adam L. Brookman, Esq.
Sarah M. Wong, Esq.
BOYLE FREDRICKSON S.C.
*Attorneys for Plaintiff/Counterclaim and Third Party Defendants*
*VERSATILE HOUSEWARES & GARDENING SYSTEMS, INC. and THOMAS MOTOSKO*
840 N. Plankinton Avenue
Milwaukee, WI 53203
Telephone:  (414) 225-9755
Facsimile:   (414) 225-9753
mtg@boylefred.com
abrookman@boylefred.com
smw@boylefred.com