USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/29/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VERSATILE HOUSEWARES &
GARDENING SYSTEMS, INC.,

                          Plaintiff,

          -against-

SAS GROUP, INC. and SCOTT SOBO

                          Defendants.

---

SAS GROUP, INC.,

                          Counterclaim
                          Plaintiff,

          -against-

VERSATILE HOUSEWARES &
GARDENING SYSTEMS, INC. and
THOMAS MOTOSKO,

                          Counterclaim
                          Defendants.

---

09-Cv-10182(SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

After a six-day jury trial, counterclaim-plaintiff SAS Group, Inc. has moved for judgment in its favor on its counterclaim for unjust enrichment against counterclaim-defendant Versatile Housewares & Gardening Systems, Inc. and Versatile's owner, third-party defendant Thomas Motosko, following a jury verdict in SAS's favor on SAS's fraud in the inducement and breach of contract counterclaims against Versatile.   SAS also moves pursuant to Sections 5001 and 5002 of the New York Civil Practice Law and Rules for prejudgment interest on its fraudulent inducement and unjust enrichment counterclaims.

For the reasons set forth below, the Court finds that SAS is entitled to judgment on its unjust enrichment counterclaim against Versatile for the value of the royalties SAS paid to Versatile.   However, because SAS has already been awarded $136,882 in damages by the jury on SAS's counterclaim

for fraudulent inducement, the Court finds that SAS is not entitled to additional damages on its unjust enrichment counterclaim. The Court also finds that SAS is not entitled to judgment on its unjust enrichment counterclaim against Motosko.

SAS is, however, entitled to 9% prejudgment interest on the $136,882 in damages awarded by the jury on SAS's fraudulent inducement counterclaim dating from October 1, 2007 to the date of the verdict pursuant to N.Y. C.P.L.R. § 5001. The Court also instructs the Clerk of Court to add 9% interest from the date of the verdict to the date of judgment pursuant to N.Y. C.P.L.R. § 5002.

## I.  BACKGROUND

This long lasting and multifaceted dispute centers on a licensing agreement for the manufacture and distribution of the Awesome Auger, a gardening tool that was a mainstay of late-night TV infomercials. According to the late TV pitchman Billy Mays, the Awesome Auger "takes the hard work out of yard work." (PX72.) The tool, invented by third-party defendant Thomas Motosko around 1998, is an auger that fits into an electric drill. (*See* Trial Tr. at 46:23-47:6, 48:23-25.) Motosko's invention departs from the traditional auger by attaching the auger's cylindrical shaft to an extension—another long cylindrical shaft—which in turn fits into a drill as if it were a normal drill bit. (*See* DX23; PX6; Trial Tr. at 46:23-47:6.) He obtained a patent that purportedly covered the tool in October 2005—U.S. Patent 6,955,227 (the '227 Patent). (DX23.)

On December 19, 2006, Versatile and SAS entered into two separate contracts: in the Patent Assignment Agreement, Versatile assigned the '227 Patent to SAS, (PX25); in the Worldwide Distribution and Royalty Agreement, Versatile assigned SAS the exclusive right to manufacture, sell, and market the tool covered by the '227 Patent, (PX24).

At trial, SAS sought to prove that Versatile had fraudulently induced SAS to enter into those agreements and that Versatile had breached its contracts regarding the '227 Patent. (Dkt. No. 384, Revised Joint Pretrial Order at IV.D.2 & IV.D.4.) SAS contended that Versatile had warranted that the '227 Patent was valid and that the product Versatile was licensing to SAS was protected pursuant to the '227 Patent. (*See* PX25; *see also* PX24.)

However, according to SAS's argument at trial, the '227 Patent was invalid because Versatile had obtained the patent based upon fraudulent or inequitable conduct committed by Motosko and his lawyer before the U.S. Patent and Trademark Office ("USPTO").   SAS alleged that Versatile knowingly failed to disclose to the USPTO that the feature of the product that Versatile claimed was novel—a cavity in the tip of the auger—was actually prior art. Pursuant to SAS's theory, Versatile breached its warranties that the patent was valid and the product was covered by the patent and also breached the implied covenant of good faith and fair dealing. (Dkt. No. 384, Revised Joint Pretrial Order at IV.D.2.) SAS also contended that Versatile fraudulently induced SAS to enter the agreement based on these misrepresentations about the validity and applicability of the '227 Patent. (*Id.* at IV.D.4.)

At the conclusion of the trial, the jury found that Versatile fraudulently induced SAS into entering the Worldwide Distribution and Royalty Agreement or the Patent Assignment Agreement, and awarded SAS $136,882 in damages.  The jury also found Versatile liable for breach of contract; however, the jury did not award SAS any damages on its breach of contract counterclaim. (Trial Tr. at 784:7-787:20; Verdict Form.)  SAS's unjust enrichment counterclaims against Versatile and Motosko, which are equitable, were left for the Court to decide.

## II. DISCUSSION

### A. SAS's Unjust Enrichment Counterclaim Against Versatile

#### 1. *SAS's Unjust Enrichment Counterclaim Based on Royalty Payments*

##### a. *SAS's unjust enrichment counterclaim based on royalty payments is consistent with the jury's verdict.*

Versatile argues that a judgment in SAS's favor on SAS's unjust enrichment counterclaim would be inconsistent with the jury's verdict that Versatile breached the parties' contract—a verdict that presupposes that there

3

was a valid contract between the parties.[1]  Versatile points to the doctrine that provides that unjust enrichment is a quasi-contract claim, which is precluded by the existence of a written contract on the same subject matter. *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388-89 (1987). Versatile urges that, because the parties' contract was affirmed by the jury's verdict, SAS is precluded from bringing its unjust enrichment counterclaim.

Nonetheless, breach of contract and unjust enrichment claims may be consistent with one another when an unjust enrichment claim is based on terms outside of the contract at issue. *See Ashwood Capital, Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 10-11 (1st Dep't 2012); *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 58 A.D.3d 6, 20 (2d Dep't 2008).  Here, SAS contends—correctly—that the royalties were rendered outside of the parties' agreement because the product that SAS sold was not covered by the '227 Patent and thus fell outside the scope of the agreement.

The Court concludes that SAS's unjust enrichment counterclaim against Versatile is in fact consistent with the jury's verdict because the royalties that SAS paid to Versatile were extra-contractual.  The Worldwide Distribution and Royalty Agreement provides that Versatile is entitled to a "royalty on all Net Sales Collected of *the Product*." (PX24 ¶ 3.1 (emphasis added).)  The "Product" is defined as "products, including a ground auger, under [patent number 6,955,227]." (*Id.* at Preamble.)  SAS paid Versatile royalties under the assumption that it was required to do so because the augers that SAS sold were covered by that patent and thus by the agreement as well.  However, in order to practice the '227 Patent, the augers were required to have a cavity in the tip of the auger. (*See* DX21 at 8; DX23; DX216 at 20; Trial Tr. at 129:7-14.)  The augers that SAS sold did not have the necessary cavity in the tip and thus were not covered by the '227 Patent and were not the subject of the agreement. (*See* DX21 at 8; DX23; DX216 at 20; Trial Tr. at 122:13-124:9, 125:22-126:25, 127:5-128:5, 129:4-14, 228:19-230:3.)

---

[1] Damages for fraudulent inducement may be awarded either in the form of rescission of the contract or legal damages. *Fitzgerald v. Title Guarantee & Trust Co.*, 290 N.Y. 376, 378–79 (1943). Here, SAS expressly sought legal damages on its fraudulent inducement counterclaim, and was awarded such damages by the jury. (Trial Tr. at 786:7-787:20; Verdict Form.)

No contract or obligation existed regarding the payment of royalties for augers that did not have a cavity in the tip. Consequently, the royalties that SAS paid Versatile were extra-contractual and SAS may pursue its unjust enrichment counterclaim. *See Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 417 (1st Dep't 1999); *Joseph Sternberg, Inc. v. Walber 36th St. Assocs.*, 187 A.D.2d 225, 227-28 (1st Dep't 1993).

> b.  *Versatile was unjustly enriched by the $136,882 in royalty payments SAS made to Versatile.*

At trial, SAS proved the elements of unjust enrichment with regard to the royalties it paid to Versatile: (1) Versatile was enriched by those royalty payments, (2) at SAS's expense, and (3) equity and good conscience militate against permitting Versatile to retain the royalties that SAS paid it. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2002); *AHA Sales*, 53 A.D.3d at 19.

Versatile benefitted in the amount of $136,882, which SAS paid to Versatile as a royalty for the augers it sold pursuant to its belief that the augers fell under the '227 Patent. (*See* Trial Tr. at 223:25-225:4, 364:6-13, 435:3-5.) However, as noted *supra*, the '227 Patent—and thus the agreement—did not cover the augers that SAS sold. (*See* PX24; DX21 at 8; DX23; DX216 at 20; DX217; Trial Tr. at 122:13-124:9, 125:10-126:25, 127:5-128:5, 129:4-14, 228:19-231:3.) Therefore, SAS was under no legal obligation to make royalty payments to Versatile, and Versatile had no legal basis for demanding or retaining royalty payments. Because Versatile did not hold the patent for the product that SAS sold and knew that its patent did not cover SAS's product, the Court finds that good conscience militates against Versatile retaining the $136,882 benefit it received at the expense of SAS. (*See* PX24; DX21 at 8; DX23; DX216 at 20; DX217; Trial Tr. at 122:13-124:9, 125:10-126:25, 127:5-128:5, 227:10-25, 228:19-231:3.)

SAS is entitled to judgment on its counterclaim that Versatile was unjustly enriched by the $136,882 in royalty payments that SAS made to Versatile.

2.  *SAS's Counterclaims for Additional Unjust Enrichment Damages Fail*

The claims in this action have been ever-evolving, including into and during the trial itself. Even now, SAS attempts to assert new counterclaims it wishes it had brought against Versatile, all under the guise of seeking additional damages for unjust enrichment. In addition to seeking judgment on its unjust enrichment counterclaim for the royalty payments, SAS now seeks additional damages for unjust enrichment based on (i) profits Versatile obtained using SAS's advertising for the Awesome Auger; (ii) Versatile's alleged breach of the exclusivity provision in the contract; (iii) the discount Versatile received from the manufacturer Greatway for directing SAS's business to Greatway; and (iv) the money that SAS paid to Versatile to purchase Versatile's leftover inventory of defective augers. However, the time has long passed for SAS to assert these new counterclaims, and, in any event, unjust enrichment is not the proper vehicle for these alleged damages.

a.  *The benefit of SAS's advertising in the form of Versatile's revenue exceeding prior average annual sales ($98,246.33) is not recoverable by SAS.*

SAS claims that Versatile unjustly benefitted by using SAS's advertising of the Awesome Auger, pointing to evidence that Versatile's sales of the auger increased when SAS ran its advertising campaign. However, there is nothing in the record suggesting that Versatile's profits cannot rightfully be kept by Versatile. *See AHA Sales*, 53 A.D.3d at 19.

The Worldwide Distribution and Royalty Agreement recognized that SAS's advertising would help Versatile's sales and it accordingly provided for a reverse royalty from Versatile to SAS. (*See* PX24 ¶ 5.2; *see also* PX22.) However, the contract does not apply here because the auger that Versatile sold—as with the auger that SAS sold—did not have a cavity in the tip and thus was not covered by the contract. (*See* PX24; DX23; Trial Tr. at 128:14-130:5, 140:17-141:8.) Moreover, even if that agreement covered the auger that Versatile sold, then breach of contract would be the proper vehicle for SAS's claim to the increased revenue, not unjust enrichment. *See Clark-Fitzpatrick*, 70 N.Y.2d at 388-89.

Regardless, the cases that SAS cites for the proposition that it only needs to prove sales while Versatile carries the burden to apportion its profits are cases awarding damages for false advertising and for counterfeiting—not unjust enrichment cases. *See Rexall Sundown, Inc. v. Perrigo Co.*, 707 F. Supp. 2d 357, 362 (E.D.N.Y. 2010); *GAKM Resources LLC v. Jaylyn Sales, Inc.*, 2009 WL 2150891, at *5 (S.D.N.Y. July 20, 2009), *adopt'g* R. & R. These cases specifically apply 15 U.S.C. § 1117(a), which provides for damages in trademark actions and allows a plaintiff to recover defendant's profits upon a violation of 15 U.S.C. § 1125(a) or (d). These cases are inapposite; unjust enrichment is not the proper vehicle to obtain Versatile's increased revenue.

SAS has not demonstrated that Versatile's revenue exceeding prior average annual sales allegedly obtained through the benefit of SAS's advertising is recoverable pursuant to a theory of unjust enrichment.

> b.   *SAS is not entitled to Versatile's revenue from sales to retailers, wholesalers, and catalogue companies ($89,601).*

SAS also claims that Versatile "obtained $89,601 in sales to retailers, wholesalers, and catalogue companies, through the use of SAS's national advertising campaign for auger products, in knowing violation of the Worldwide Distribution and Royalty Agreement." (Counterclaim Plf.'s Reply Mem. at 1.) In its opening brief, SAS styled this claim as if it were a breach of contract claim: Versatile had violated the exclusivity provision in the Worldwide Distribution and Royalty Agreement that prohibited Versatile from selling to retailers, wholesalers, and catalogue companies. (*See* PX24 ¶ 5.1.) However, as noted *supra*, Versatile responds by arguing that the auger it sold was not the subject of the agreement between the parties because the auger did not have a cavity in the tip. (*See* PX24; DX23; Trial Tr. at 128:14-130:5; 140:17-141:8.) Because the exclusivity provision did not apply to Versatile's sales of products not covered by the patent, there was nothing barring Versatile's actions. Moreover, if the auger were covered by the agreement, then SAS's unjust enrichment counterclaim for these royalties would be precluded. *See Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 388-89.

     c.   *SAS is not entitled to recover the benefit of the alleged "sweetheart pricing arrangement" with Greatway.*

In its opening memorandum, SAS briefly urges that Versatile was unjustly enriched by using SAS's business as a way to negotiate a better arrangement for itself with the manufacturer Greatway. However, both parties ignore this claim in their subsequent briefing. This is a perfect example of the "drive by briefing" in this action: the parties float a brief thought in a memorandum, provide sparse—usually no—record or case substantiation for it, and leave the Court to divine the point.

SAS has not pointed to evidence that the Greatway arrangement was reached at its expense, as is required for an unjust enrichment claim. *Cf. In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 129 (2d Cir. 2002). SAS merely speculates, "[T]his benefit to Motosko and Versatile, likely caused SAS to pay Greatway more for its augers." (Counterclaim Plf.'s Mem. at 13.) Such speculation is not enough to demonstrate that SAS is entitled to additional damages for unjust enrichment based on Versatile's agreement with Greatway.

     d.   *The amount paid for the defective augers Versatile sold to SAS ($1,500) is not recoverable by SAS.*

SAS also contends that it conferred a benefit on Versatile by purchasing what it claims were defective augers for $1,500, which Versatile is not entitled to retain. There is no evidence in the record that SAS did not receive its end of the bargain in purchasing the augers—*i.e.*, there is no evidence that SAS was not able to resell those augers or that consumers complained about them, or, for that matter, there is no evidence in the record regarding what the actual worth of those augers was. It could very well be that $1,500 was a fair price.

SAS did not assert a counterclaim on this theory in its pleadings or in the parties' Revised Joint Pretrial Order, (*see* Dkt. Nos. 183, 384). Accordingly, SAS is not entitled to damages for unjust enrichment for the purportedly defective augers that it purchased.

### 3.   *Unclean Hands Do Not Bar SAS's Unjust Enrichment Counterclaim Against Versatile*

Versatile argues that SAS's unclean hands constitute an equitable defense to SAS's unjust enrichment counterclaim.  According to Versatile, SAS cannot recover on its unjust enrichment counterclaim because SAS continued to represent to consumers that its auger was patented even after SAS came to believe that the auger was not practicing the '227 Patent.

However, in order to obtain the benefit of the defense of unclean hands, Versatile must demonstrate that (1) SAS is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by Versatile; and (3) Versatile was injured thereby.  *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 446 (S.D.N.Y. 2010); 55 N.Y. Jur. 2d Equity § 112.  Versatile has not presented any evidence that SAS's representations to consumers regarding the patent for its product were relied upon by Versatile or that Versatile was injured by those statements.

In sum, SAS is entitled to judgment on its unjust enrichment counterclaim against Versatile to the extent of the royalty payments that SAS paid to Versatile because they were not owed under the parties' agreements.

Nonetheless, SAS is not entitled to double recovery.  The jury already awarded SAS $136,882 in damages on SAS's fraudulent inducement counterclaim—the exact amount SAS paid to Versatile in royalties.  "A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery."  *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995)).  Accordingly, the Court declines to award additional damages to SAS beyond the $136,882 already awarded by the jury because that award adequately compensates SAS for its unjust enrichment counterclaim against Versatile.

### B.   Thomas Motosko Is Not Individually Liable for Unjust Enrichment

SAS also seeks judgment against Motosko individually on its unjust enrichment counterclaim, urging that Motosko participated in the alleged fraudulent conduct and, pursuant to New York law, a corporate officer who

participates in a tort, even if in the course of his corporate duties, may be held individually liable.

SAS ignores that unjust enrichment is not a tort, but rather is a quasi-contract claim. Therefore, the cases to which SAS cites are inapposite. *Cf. Toyota Tsusho Am., Inc. v. Siegel*, 2010 WL 101933, at *5 (S.D.N.Y. Jan. 12, 2010), *adopt'g* R. & R. (analyzing New York's "commission of a tort" doctrine); *Am. Express Travel Related Servs. Co. v. N. Atl. Res., Inc.*, 261 A.D.2d 310, 311 (1st Dep't 1999) (same).

Furthermore, SAS has not pointed to any trial evidence that Motosko personally benefitted. Evidence that Motosko was the sole owner of Versatile, (*see* Trial Tr. at 92:11-20), is not enough. *See Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 539-40 (S.D.N.Y. 2011), *adopt'g* R. & R. There is no evidence that any funds were transferred to Motosko individually or that he exercised control or domination over Versatile such that he benefitted from the royalties paid to Versatile. *See id.; see also AHA Sales*, 58 A.D.3d at 23-24.

Moreover, in arguing that Motosko may be found to have been unjustly enriched and personally liable, SAS relies on the assumption that the jury found *both* Versatile and Motosko liable for fraudulent inducement. However, the parties ignore that the jury charge and the jury verdict form only addressed SAS's claims against Versatile at trial, not any claims against Motosko. (*See* Trial Tr. at 763:5-770:16; Verdict Form.) There has been no jury finding that Motosko is personally liable on any counterclaim whatsoever. (*See* Trial Tr. at 784:7-787:20; Verdict Form.)

In sum, Motosko cannot be held liable on SAS's unjust enrichment counterclaim on this record.

## C.  SAS is Entitled to Prejudgment Interest

SAS seeks prejudgment interest on the $136,882 in damages that the jury awarded SAS on its fraudulent inducement counterclaim against

Versatile, as well as on any damages this Court might award on its unjust enrichment counterclaims.[2]

The parties disagree over whether statutory prejudgment interest of 9% is proper on SAS's fraudulent inducement counterclaim and they also dispute what date should be used as the starting date from which to calculate prejudgment interest. The Court addresses each issue in turn.

### 1. SAS Is Entitled to Prejudgment Interest on Its Fraud in the Inducement Counterclaim at the Interest Rate of 9%

New York law provides that prejudgment interest "shall be recovered upon a sum awarded. . . because of an act or omission depriving or otherwise interfering with . . . possession or enjoyment of property." N.Y. C.P.L.R. § 5001; *see* § 5004; *Strobl v. New York Mercantile Exch.*, 590 F. Supp. 875, 881 (S.D.N.Y. 1984), *aff'd*, 768 F.2d 22 (2d Cir. 1985); *Quintel Corp. N.V. v. Citibank, N.A.*, 606 F. Supp. 898, 913-14 (S.D.N.Y. 1985). Accordingly, SAS is entitled to prejudgment interest on the $136,882 in damages the jury awarded SAS on its fraud in the inducement counterclaim. It is equally clear that interest is awarded at a rate of 9% per annum pursuant to N.Y. C.P.L.R. §§ 5001, 5004.

### 2. Prejudgment Interest Runs from the Intermediate Date of October 1, 2007

New York Civil Practice Law provides as follows:

> Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b).

---

[2] Again, SAS assumes in its briefing that the jury found Motosko liable for fraud in the inducement. The verdict form reflects no such finding. (*See* Verdict Form.)

SAS contends that it is entitled to interest dating from December 19, 2006—the date of the two agreements between SAS and Versatile—because that was the earliest ascertainable date when its counterclaim for fraudulent inducement existed. Versatile contends that interest should run from July 29, 2008, the day after the last royalty payment was made, but it provides no record or case support for that position.

SAS responds that the Court should use the intermediate date of October 1, 2007 instead. October 1, 2007 is nine and one half months after the parties entered into their agreements and ten months before the final royalty payment was made.

It is manifest that although the cause of action indeed accrued when Versatile induced SAS to enter into the agreements to license the '227 Patent, SAS paid royalties to Versatile on various dates over the course of their taking the hard work out of yard work. (*See, e.g.*, DX225, Exs. Q & R). In light of the fact that royalty payments were made at various times, the Court exercises its discretion pursuant to N.Y. C.P.L.R. § 5001(b) to calculate prejudgment interest from the intermediate date proposed by SAS: October 1, 2007. *See Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp. 2d 655, 667 (S.D.N.Y. 2013). Starting as of October 1, 2007, to the entry of the verdict, SAS is entitled to 9% interest on the $136,882 awarded by the jury.

SAS also seeks prejudgment interest dating from the date of the jury verdict until the date that judgment is entered by the Clerk of the Court. Section 5002 of the New York Civil Practice Law and Rules provides:

> Interest shall be recovered upon the total sum awarded, including interest to verdict, report or decision, in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment. The amount of interest shall be computed by the clerk of the court and included in the judgment.

N.Y. C.P.L.R. § 5002. Accordingly, the Court directs the Clerk of Court to add to the judgment 9% interest from the date of verdict to the date of judgment on the sum of (1) the fraudulent inducement damages of $136,882 as well as on (2) the N.Y. C.P.L.R. § 5001 interest. *See Fresh Del Monte Produce*, 933 F. Supp. at 667.

    3.   *There Are No Additional Damages on Which to Award*
        *Prejudgment Interest for SAS's Unjust Enrichment Counterclaim*

Although SAS also seeks prejudgment interest on its unjust enrichment counterclaim against Versatile, the Court has determined that SAS has already been adequately compensated by the $136,882 in damages that the jury awarded on SAS's fraud in the inducement counterclaim. Therefore, there is no separate award of damages on SAS's unjust enrichment counterclaim on which to add interest.

## III. CONCLUSION

The Court finds that SAS is entitled to judgment against Versatile on SAS's unjust enrichment counterclaim for royalties paid, but is not entitled to damages beyond the $136,882 that the jury awarded SAS on its fraudulent inducement counterclaim. The Court denies SAS's motion to enter judgment against Thomas Motosko for unjust enrichment.

The Court awards statutory prejudgment interest of 9% on the damages arising from Versatile's fraudulent inducement of SAS running from the intermediate date of October 1, 2007 to February 29, 2016, the date of the verdict. *See* N.Y. C.P.L.R. § 5001. In addition, pursuant to N.Y. C.P.L.R. § 5002, the Court instructs the Clerk of Court to add 9% interest from the date of the verdict to the date of the judgment on the sum of (1) the $136,882 in damages awarded by the jury and (2) the N.Y. C.P.L.R. § 5001 prejudgment interest accrued from October 1, 2007 to verdict.

Dated:  New York, New York
       July 29, 2016

                          SO ORDERED:

                                    Sidney H. Stein, U.S.D.J.